OPINION
Appellant The Cincinnati Insurance Co. ("Cincinnati") appeals the decision of the Stark County Court of Common Pleas that found coverage under a commercial auto policy and commercial umbrella policy it issued to Appellee Ronald Rohr's employer, Fulfab, Inc. The following facts give rise to this appeal.
On August 30, 1996, Appellee Ronald Rohr was on his way to work when he was struck by a vehicle while operating a motorcycle on State Route 172. Rohr sustained serious injuries to his left leg and underwent approximately ten surgeries to save the leg. On the date of the accident, Rohr was employed as a field supervisor by Fulfab, Inc. Fulfab, Inc. was insured through two policies of insurance issued by Cincinnati.
The first insurance policy, a commercial auto policy, had liability limits of $1,000,000 and uninsured motorist coverage. Underinsured motorist coverage was not separately specified on the Declarations Page of the Business Auto Coverage Part. The second policy, a commercial umbrella policy, had liability limits in excess of the underlying policy of $4,000,000. Both policies were issued effective December 31, 1995.
Following the accident, appellee and his wife, Susan Rohr, filed a lawsuit against the alleged tortfeasor, who was insured with automobile liability insurance limits of $100,000, with the claims ultimately being settled for $98,500. Appellees signed various documents, including releases of all claims, to confirm the settlement. At the time of the settlement, Cincinnati was not notified of the accident, injuries or claims. However, four and one-half years later, appellees filed a declaratory judgment action, on February 26, 2001, under the two policies of insurance Cincinnati issued to Fulfab, Inc., seeking coverage under both of the policies issued to Fulfab, Inc.
Appellees filed a motion for partial summary judgment on May 25, 2001, seeking underinsured motorist coverage under both of the policies. On May 30, 2001, Cincinnati filed a motion for summary judgment seeking dismissal of the complaint and declaration that there were no coverages under the two policies. On July 10, 2001, the trial court issued its judgment entry in which it found there were no genuine issues of material fact and that appellees were entitled to summary judgment as a matter of law. The trial court overruled Cincinnati's motion for summary judgment.
Cincinnati timely filed its notice of appeal and sets forth the following sole assignment of error for our consideration:
 I. THE TRIAL COURT ERRED BY FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF APPELLANT AND IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES.
 Summary Judgment Standard
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36. As such, we must refer to Civ.R. 56(C) which provides, in pertinent part:
 * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *
Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case.
The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421,429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280. It is based upon this standard that we review Cincinnati's assignment of error.
 I
Cincinnati contends, in its sole assignment of error, that the trial court erred when it granted appellees' motion for summary judgment and denied its motion for summary judgment. Cincinnati sets forth a number of arguments in support of its assignment of error. Prior to addressing these arguments, we set forth the pertinent language contained in the policies at issue.
The commercial auto policy defines an "insured," under the liability coverages, as follows:
1. WHO IS AN INSURED
The following are "insureds:"
a. You for any covered "auto."
 b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
* * *
 (2) Your employee if the covered "auto" is owned by that employee * * *.
The commercial auto policy, in its Ohio Uninsured Motorists Coverage endorsement, defines "insured" as follows:
B. WHO IS AN INSURED
1. You.
2. If you are an individual, any "family member".
 3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
 4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."
The commercial umbrella policy defines an "insured" as follows:
 Each of the following is an Insured under this policy to the extent set forth below:
 (a) The Named Insured as shown in the Declarations and if such organization is a corporation also includes:
* * *
 (f) Any executive officer, director, other employee or stockholder of yours while acting within the scope of his duties as such.
The commercial auto policy further imposes the following conditions in Section IV-BUSINESS AUTO CONDITIONS:
 The following conditions apply in addition to the Common Policy Conditions:
* * *
 2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS:
 a. In the event of "accident," claim, "suit" or "loss," you must give us or our authorized representatives prompt notice of the "accident" or "loss."
* * *
3. LEGAL ACTION AGAINST US
 No one may bring a legal action against us under this Coverage Form until:
 a. There has been full compliance with all the terms of this Coverage Form; * * *.
* * *
5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US
 If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.
The commercial auto policy, in its endorsement for Ohio Uninsured Motorists Coverage, further provides:
C. EXCLUSIONS
This insurance does not apply to:
 1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle".
* * *
 2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:
* * *
 c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle" and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle".
The commercial umbrella policy further mandates that all subrogation rights for the benefit of Cincinnati be preserved and protected with respect to any payments it might make. This portion of the policy provides:
 3. The Insured's Duties in the Event of Occurrence, Claim or Suit
 In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to us or any of our authorized agents as soon as practicable.
* * *
6. Subrogation
 In case of any payment by us of ultimate net loss hereunder, we shall be subrogated to all the Insured's rights of recovery therefore, and will act in concert with all other interests (including the Insured) concerned. * * *
* * *
 9. Legal Action Against Us and Payment of Ultimate Net Loss
 No legal action may be brought against us
unless there has been full compliance with all the terms of this policy * * *.
* * *
The record indicates that the applicable UM/UIM coverage for the commercial auto policy was reduced, by the President of Fulfab, Inc., in a form entitled "UNINSURED AND UNDERINSURED MOTORISTS PROTECTION OPTION SELECTION FORM-OHIO." In this form, the President indicated that he selected "* * * Uninsured Motorists and Underinsured Coverages at the following limits which are lower than the Bodily Injury Liability Limits of my policy." Under the limits of liability, the President checked "Other" and wrote in $500,000, instead of the bodily injury liability limits of $1,000,000.
In the commercial umbrella policy, the President rejected UM/UIM coverage in an endorsement that he executed. The endorsement is entitled "EXCLUSION OF EXCESS UNINSURED/UNDERINSURED MOTORIST COVERAGE ENDORSEMENT." This endorsement contains the following language:
 In consideration of the premium at which this policy is written, it is agreed that the insurance afforded by this policy does not apply to any Uninsured Motorist/Underinsured Motorist Coverage as defined by the statutes of the state in which you reside.
Having set forth the pertinent language in the two policies under consideration, we now address the issues raised by Cincinnati in its sole assignment of error. We will address these issues in the same order appellees did in their appellate brief.
A. Was Appellee Ronald Rohr an Insured Under the Subject CommercialUmbrella Liability Policy If Injured While Not Acting Within the Scope ofHis Duties as an Employee of Fulfab, Inc.?
Cincinnati admits that Appellee Ronald Rohr is an insured under the commercial auto policy. However, Cincinnati denies that Appellee Rohr is an insured under the commercial umbrella policy. In its judgment entry, the trial court concluded that Appellee Rohr qualifies as an insured under the commercial umbrella policy because Cincinnati failed to comply with the requirements of Linko v. Indemn. Ins. Co. of N. Am. (2000),90 Ohio St.3d 445. Judgment Entry, July 10, 2001, at 3. The Linko case requires that in making a written offer, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium, describe the coverage and state the coverage limits. Id. at 449.
Cincinnati maintains the trial court should have concluded that Appellee Rohr was not an insured because he was not a named insured under the commercial umbrella policy and because he was not acting within the scope of his employment at the time of the accident. In support of this argument, Cincinnati cites the case of Estate of Carla Myers v. CNAFinancial Corp. (Mar. 8, 2001), U.S. Dist. Court, N. Dist. of Ohio, Case No. 5:00-CV-1759, unreported.
In Myers, the accident giving rise to the lawsuit occurred on October 25, 1992, when Carla Myers and three of her friends were returning home, in a limousine, from a high school dance. Id. at 2. Carla suffered fatal injuries as a result of the accident and died two weeks later.Id. Following the accident, Carla's estate, along with her father, Timothy Myers, filed suit against both the limousine company and the driver of the other vehicle involved in the accident. Id. In October 1999, a jury returned a verdict against the driver of the other vehicle, who had been intoxicated at the time of the accident. The jury awarded $6,000,000 in compensatory damages and $2,000,000 in punitive damages.Id. Because the negligent driver did not have insurance coverage or any funds from which to satisfy this judgment, neither Carla's estate nor her parents have recovered any of the damages awarded to them in the civil action. Id.
Thereafter, the estate and Carla's parents sought to recover a portion of these damages under an automobile insurance policy owned by Loral Corporation. Id. at 2-3. CNA Financial issued the policy to Loral Corporation, in 1992, while Carla's father was employed by Loral Corporation. Id. at 3. The policy did not explicitly provide UM/UIM coverage. However, plaintiffs argued that such coverage was implied as a matter of law under R.C. 3937.18. Id.
In its opinion, the district court first considered whether Carla's father qualified as an insured under the 1992 policy. Id. at 5. Under the policy, insured is first defined as the policyholder for any covered auto. Id. An endorsement to the policy amended this definition to include employees and members of their household who use a covered auto in furtherance of Loral Corporation's business or at Loral Corporation's specific request. Id. at 5-6.
Based upon this definition, the district court concluded that Carla's father was not an insured, under the policy issued to Loral Corporation, because he did not sustain injuries while driving an auto much less while driving an auto in connection with his employment at Loral Corporation.Id. at 6. Further, Carla also did not qualify as an insured under the policy as she was not an employee of Loral Corporation and sustained injuries while returning from a high school dance in a limousine. Id.
The district court further determined that the Ohio Supreme Court's decision in Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660, was not applicable. Id. at 7. In reaching this conclusion, the district court reasoned that in the Scott-Pontzer case, the language excluding coverage for employees acting outside the scope of employment did not appear in the definition of an insured. Id. Rather, the exclusion was set forth elsewhere in the policy. Id.
However, in the Myers case, the policy under consideration by the district court contained scope of employment language in the definition of insured. Thus, the district court concluded "* * * the language limiting coverage to those employees and members of their household who act at the request or for the benefit of Loral Corporation does not limit the coverage of an insured, but instead determines who is an insured in the first instance." Id. The district court held that because neither Timothy Myers nor Carla Myers qualify as insureds under the 1992 Policy, a claim for UM/UIM coverage may not be implied by operation of law. Id.
Although the commercial umbrella policy, in the case sub judice, contains scope of employment language in Part II — Section D, defining "WHO IS AN INSURED," as did the policy in the Myers case, we find Myers unpersuasive for the reasons that follow. First, the Myers
case does not address the Ohio Supreme Court's decisions in Gyori v.Johnston Coca-Cola Bottling Grp., Inc. (1996), 76 Ohio St.3d 565 andLinko, supra, and what effect they have on the analysis of this issue.
In Gyori, the Ohio Supreme Court held:
 1. There can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the insurance provider.
 2. In order for a rejection of uninsured motorist coverage to be expressly and knowingly made, such rejection must be in writing and must be received by the insurance company prior to the commencement of the policy year. Id. at paragraphs one and two of the syllabus.
The Court also concluded that "[t]he mandates of R.C. 3937.18 apply to providers of excess coverage as well as providers of primary liability coverage." Id. at 568. Failure to properly offer or reject UM/UIM coverage results in coverage by operation of law. Id. at 567.
In the Linko case, the Court explained that "Gyori stands for the proposition that we cannot know whether an insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection. It only follows that a valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in name." Linko at 449. The Linko court went on to identify the required elements for written offers: a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits. Id.
In applying Gyori and Linko to the facts of this case, we conclude appellees are insureds, by operation of law, under the commercial umbrella policy because Cincinnati failed to satisfy the offer requirements of R.C. 3937.18. The only portion of the commercial umbrella policy that addresses UM/UIM coverage is contained in an endorsement. The endorsement provides as follows:
 In consideration of the premium at which this policy is written, it is agreed that the insurance afforded by this policy does not apply to any Uninsured Motorist/Underinsured Motorist Coverage as defined by the statutes of the state in which you reside.
The endorsement is signed by the President of Fulfab, Inc. The endorsement does not describe the coverage, does not list the premium costs of UM/UIM coverage and does not expressly state the coverage limits. Thus, the endorsement rejection form, lacking the required information, could not be termed a written offer that would allow an insured to make an express, knowing rejection of coverage. As such, UM/UIM coverage is provided, by operation of law, under the commercial umbrella policy.
Further, our conclusion finding appellees qualify as insureds under the commercial umbrella policy is also in accord with the Ohio Supreme Court's decision in the Scott-Pontzer case. In Scott-Pontzer, the Court concluded that plaintiff was an insured under the umbrella/excess policy issued to the decedent's employer because the insurer failed to offer UM/UIM coverage under the umbrella/excess insurance policy.Scott-Pontzer at 665. The Court further noted that the umbrella/excess policy did not contain an uninsured motorist coverage form that defined insureds for purposes of underinsured motorist coverage. Id. In the case sub judice, the commercial umbrella policy only defines who qualifies as an insured in the context of excess liability coverage and not for purposes of UM/UIM motorists coverage.
Thus, for the foregoing reasons, we conclude Appellee Ronald Rohr is an insured under the commercial umbrella policy even though the injuries he suffered occurred outside the scope of his duties as an employee of Fulfab, Inc.
B. If Appellee Ronald Rohr Is Not an Insured Under the SubjectCommercial Umbrella Liability Policy, Does He Have Standing to Challengeor Invalidate the Exclusion/Rejection of Uninsured/Underinsured MotoristsCoverages Under the Policies Issued By Cincinnati?
Cincinnati contends the endorsement executed by the President of Fulfab, Inc., in which he rejected UM/UIM coverage, is undisputed evidence that UM/UIM coverage was offered and subsequently rejected by Fulfab, Inc. and therefore, is not a part of the umbrella policy.
Having already concluded that Ronald Rohr qualifies as an insured under the commercial umbrella policy, we find he has standing to enforce the provisions therein. The Ohio Supreme Court reached a similar conclusion in the Linko case. The Court stated:
 As was the case with the plaintiff in Gyori v. Johnston Coca-Cola Bottling Grp., Inc. (1996), 76 Ohio St.3d 565, 669 N.E.2d 824, the plaintiff here was not a named insured but seeks a declaration of whether the employer expressly and knowingly rejected UM/UIM coverage for its employees. The validity of the employer's alleged rejection is at the heart of both cases. The plaintiff in Gyori had standing to bring an action to resolve that issue, as does the plaintiff in this case. Linko at 448.
Accordingly, Appellee Ronald Rohr, as an insured under the commercial umbrella policy, has standing to challenge or invalidate the rejection of UM/UIM coverage under said umbrella policy.
C. Was the Reduction In Limits of Uninsured/Underinsured MotoristCoverages Valid Under Ohio Law?
In support of its argument that the reduction of UM/UIM coverage was valid, in the commercial auto policy, Cincinnati maintains it offered Fulfab, Inc. UM/UIM limits equal to the liability limits of the commercial auto policy. However, the President of Fulfab, Inc. executed an option selection form in which he selected lower UM/UIM coverage of $500,000. Cincinnati argues the option selection form establishes that Fulfab, Inc. did not reject UM/UIM coverage, but merely selected lower coverages that were still in excess of the minimum coverage required by R.C. 4509.20.
Cincinnati also maintains the option selection form satisfied the offer requirements of R.C. 3937.18(C) since it did not involve a rejection of UM/UIM coverage. As such, Cincinnati concludes the Ohio Supreme Court's decision in the Linko case does not apply since Linko only involved rejection of UM/UIM coverage as opposed to the reduction of coverage.
R.C. 3937.18, as it was codified at the time of the issuance of the commercial auto policy, provided, in pertinent part:
 (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
 (1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.
 (2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.
 (B) Coverages offered under division (A) of this section shall be written for the same limits of liability. No change shall be made in the limits of one of these coverages without an equivalent change in the limits of the other coverage.
In the Gyori case, the Ohio Supreme Court stated that the "* * * insurance companies bear the burden of showing that any rejection was knowingly made by the customer." Gyori at 567-568, citing Ady v. W. Am.Ins. Co. (1982), 69 Ohio St.2d 593, 597. However, there can be no rejection absent a written offer of UM/UIM coverage from the insurance provider. Linko at 448-449. As discussed above, a valid offer requires a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM limits. Id. at 449.
Cincinnati contends Fulfab, Inc. did not reject UM/UIM coverage but merely reduced the amount of coverage under the auto liability policy. As such, Cincinnati maintains it did not have to comply with the requirements of the Gyori and Linko cases. We conclude we do not need to reach the issue of whether a reduction in coverage is equivalent to a rejection in coverage because Cincinnati failed to first meet the requirement that it make a valid offer. In the Linko case, the Court explained that a meaningful offer must precede a valid rejection. Linko
at 449.
The record indicates, in the Business Auto Coverage Part Declaration, of the commercial auto policy, that Cincinnati offered only $500,000 in UM coverage even though the liability limits of the policy were $1,000,000. Absent the necessary elements for a meaningful offer, the President of Fulfab, Inc. could not make a valid reduction, since a meaningful offer must first be made by the insurer. Therefore, we conclude the reduction of limits in UM coverage, under the commercial auto policy, was not valid.
D. Do the Conditions and Duties Imposed By the Subject Policies Applyto Any Coverages Implied or Imposed By Operation of Law?
Cincinnati contends appellees failed to meet certain contractual obligations under the policies of insurance it issued to Fulfab, Inc. Specifically, appellees failed to give prompt or timely notice of the claim, failed to obtain its consent before entering into a settlement with the tortfeasor and destroyed its subrogation rights by virtue of settlement and release of the tortfeasor without prior notice.
The commercial auto policy contains the following language concerning notification and subrogation:
 c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle" and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle."
The commercial umbrella policy also contains similar language which requires that an insured give notice of a claim as soon as practicable and that Cincinnati "* * * shall be subrogated to the insured's rights of recovery therefor * * *." In the case sub judice, the accident occurred on August 30, 1996, and appellees settled with the tortfeasor and his carrier and released the tortfeasor from liability. Cincinnati was never notified of the accident and claim until February 2001. Further, appellees never sought the consent of Cincinnati before releasing the tortfeasor.
Cincinnati therefore concludes that even if coverages are imposed by operation of law, appellees must still satisfy the requirements of the policies in order to obtain the benefits of the policies. Cincinnati also maintains appellees' settlement with the tortfeasor constituted an interference with its subrogation rights and appellees are barred from recovery under the policies. In support of this argument, Cincinnati cites the Ohio Supreme Court case of Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, which held, in paragraph four of the syllabus, as follows:
 Based upon the established common law and further strengthened by the specific statutory provision, R.C. 3937.18, a subrogation clause is reasonably includable in contracts providing underinsured motorist insurance. Such a clause is therefore both a valid and enforceable precondition to the duty to provide underinsured motorist coverage.
This court has reached the same conclusion in the cases of MotoristMut. Ins. Co. v. Nussbaum (1994), 107 Ohio App.3d 562, and Critoria v.Cincinnati Ins. Co. (Feb.12, 1996), Stark App. No. 1995CA00248, unreported.
Cincinnati also relies upon the recent case of Luckenbill v. MidwesternIndemn. Co. (June 1, 2001), 01-CA-1536, unreported, from the Second District Court of Appeals, which held that:
 Nevertheless, UM/UIM coverage remains a contract right, not an entitlement. If the insured then fails to satisfy the conditions the policy imposes on that right, the insured forfeits his rights under the policy of UM/UIM coverage. Notice requirements are one such condition. Such conditions are no less restrictive on UM/UIM coverage than are, for example, policy limits, which are likewise governed by the agreement the parties made. Stated otherwise, when UM/UIM coverage is imposed by operation of law, the insured must satisfy the duties imposed on him by the policy in order to obtain the benefits of the concomitant duty to provide coverage that the law imposes on the insurer. Id. at 14-15.
In the Luckenbill decision, the Second District Court of Appeals recognized that this Court reached a different conclusion in the case ofMyers v. Safeco Ins. Co. of Am. (Feb. 18, 2000), Licking App. No. 99CA00083, unreported, reversed on other grounds (2001), 91 Ohio St.3d 333. In Myers, we refused to make a distinction between an exclusion from coverage and a condition for coverage as the court does in Luckenbill. Instead, we held that a condition imposed under a homeowner's policy that required preservation of the insurer's subrogation rights against a tortfeasor could not bar the insured from collecting under implied UM/UIM coverage. Specifically, we stated:
 The court in Demetry v. Kim (1991), 72 Ohio App.3d 692, rejected the concept that exclusionary provisions contained in a business liability policy applied to underinsured motorist coverage that, as in the case sub judice, was implied as a matter of law. As noted by the court in Demetry, `[t]he parties never intended underinsured coverage to be provided by the [business liability] policy. As such, there could be no negotiated exclusions intended to be implied to the underinsured coverage.' Id. at 698. The court further noted that `there is nothing, absent clear language evidencing an intent to do so, to prevent uninsured/underinsured coverage from being broader than liability coverage.' Id. Likewise, in the case sub judice, there was no language evidencing an intent to have the exclusionary provisions contained in the Safeco homeowner's policy issued to appellants apply to underinsured motorist coverage. The parties in the case sub judice never intended underinsured coverage to be provided under the Safeco policy in the first place. `As such, there could be no negotiated exclusions intended to be implied to the underinsured coverage.' (Emphasis sic.) Id. at 698. Myers at 6.
Applying the reasoning in Myers, to the facts of this case, we conclude Cincinnati's failure to offer $1,000,000 in UM/UIM coverage, under the commercial auto policy, resulted in coverage by operation of law. This coverage was not intended by the parties and was not the subject of any negotiated restrictions or conditions. Therefore, we do not impute the notice and subrogation requirements to the unintended coverage provided by operation of law.
Further, as to the commercial umbrella policy, we find a reasonable insured reading the umbrella policy would conclude that no duty to give notice of settlement or protect subrogation rights existed because a reasonable insured reading the policy language would conclude that there was no UM/UIM coverage. Accordingly, the conditions and duties imposed by the subject policies do not apply to any coverages implied by operation of law.
Cincinnati's sole assignment of error is overruled. The trial court properly granted summary judgment on behalf of appellees and denied Cincinnati's motion for summary judgment.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: WISE, J., FARMER, J., concurs. EDWARDS, P.J., concurs separately.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.