234

BUCKEYE UNION INSURANCE COMPANY *v.* BRADLEY.*

[Cite as Buckeye Union Ins. Co. v. Bradley (1972),
32 Ohio Misc. 234.]

(No. 242027—Decided May 31, 1972.)

Common Pleas Court of Franklin County.

*Messrs. Wright, Harlor, Morris, Arnold & Glander* and
*Mr. Harry Wright, III,* for plaintiff.
*Mr. Curtis H. Porter,* for defendant.

FLOWERS, J. The present action is for a declaratory
judgment under R. C. 3937.18, the uninsured motorist
statute, and comes on for consideration upon a motion for
summary judgment as filed by plaintiff insurance company.
The material facts are not in dispute and the matter has

---

*Judgment reversed, 33 Ohio App. 2d ,

been submitted to the court upon the pleadings, interrogatories, briefs and argument of counsel. On or about April 22, 1969, defendant was involved in an auto accident with an uninsured motor vehicle. At the time, defendant was operating a vehicle furnished to him by the U. S. Post Office Department for his regular use in connection with his employment in the Special Delivery Department. Defendant has made claim against plaintiff insurance company under the uninsured motorist coverage of a policy issued on an owned vehicle.

The questions presented are:

(1) Whether the plaintiff's family automobile policy applies to defendant while operating a government owned motor vehicle that is supplied to him daily for use in the scope and course of his assigned duties as a post office employee;

(2) if such coverage does apply, the effect and operation of the uninsured motorists coverage of said policy.

R. C. 3937.18, as enacted in 1965 and applicable to policies issued after January 1, 1966, provided as follows at the time of the subject accident:

"*Mandatory offering of uninsured motorist coverage.*

"No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Section 4509.20 of the Revised Code, under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further that, unless the named insured requests

such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy when the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer.''

The field of uninsured motorist law is one of fairly recent origin, first by contract and then by the enactment of mandatory requirements in most of the states. The case law is by no means uniform between states nor voluminous within Ohio—particularly interpretations of the foregoing statute. Consistent with the development, questions of insolvency, subrogation and workmen's compensation benefits have been answered by subsequent amendment.

The present policy, a family automobile policy, contains the standard provisions for protection against uninsured motorist coverage in Part IV, Coverage J. Under definitions therein ''insured automobile'' means:

''(d) A non-owned automobile while being operated by the named insured * * *.''

Further definition appears as follows:

'' 'Non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile.''

(Part I, incorporated by reference.)

''Exclusions. This policy does not apply under Part IV:

''(a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, as through being struck by such an automobile; * * *''

Defendant in the present case relies heavily upon the case of *Motorists Mutual Insurance Company* v. *Bittler,* 14 Ohio Misc. 23, decided by Judge McMonagle, Common Pleas Court of Cuyahoga County, on February 20, 1968. The syllabus thereof reads as follows:

''1. *A standard uninsured motorist's endorsement* to an automobile insurance policy provides the named insured a limited personal accident insurance effective at all

times and under all circumstances in which he sustains injury caused by an accident as a result of the operation of an uninsured automobile.

"2. *Under a standard uninsured motorists endorsement.* coverage is not excluded where injury results to the named insured while operating a non-owned automobile furnished for his regular use, nor does it exclude such coverage unless he was operating or occupying an 'insured automobile' as defined in the policy to which such endorsement is attached." (Emphasis supplied.)

That case involved an accident of November 20, 1961, prior to the enactment of R. C. 3937.18. Accordingly, the decision was governed by a standard uninsured motorist's endorsement, although the foregoing act was in force at the time of decision and was discussed by the court. The case is distinguishable from the present in a number of respects. It was decided on the lack of any language of limitation regarding "furnished for regular use" in the uninsured endorsement (as distinct from the other provisions of the policy). At page 33 of the decision, the court stated as follows:

"Since the uninsured motorists protection chiefly constitutes indemnification in the nature of personal accident insurance for the named insured, *there is, in the absence of any special provision or exclusion,* no need for his procuring and paying for two such contracts for one injury * * *." (Emphasis supplied.)

Specific exclusion does appear in the uninsured endorsement involved in the present case as previously quoted and considered in more detail hereinafter. The propriety of specific language of limitation in uninsured motorist coverage was recognized in the later decision of the Ohio Supreme Court in *Ohio Farmers Ins. Co.* v. *Wright,* 17 Ohio St. 2d 73. The syllabus reads as follows:

"1. An endorsement to an automobile insurance policy by which the insurer agrees to pay to the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured

caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile, *in the absence of specific language of limitation,* is not restricted to coverage in cases where the named insured, at the time of his injury, is using an [74] 'insured automobile' as defined in the endorsement.

"2. *In the absence of specific language of limitation* in an autmobile insurance policy *or* in an uninsured motorist endorsement thereto, providing that the benefits of such endorsement shall not be received by a named insured if using another vehicle owned by him, coverage thereunder is not excluded merely because at the time of injury the named insured was using a second motor vehicle, owned by him, which was included as an insured automobile under other provisions of the automobile insurance policy but was not included under the endorsement, and for which no extra premium had been paid for uninsured motorist coverage." (Emphasis supplied.)

As observed by the court, no interpretation of the uninsured motorists statute was involved since the accident pre-dated that enactment. However, at pages 79, 80 of the opinion the following appears:

"In *United States Fidelity & Guaranty Co.* v. *Webb* (Fla. App. 1966), 191 S. 2d 369, cited by appellee, the uninsured motorist endorsement specifically provided that it did not apply 'to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by a named insured or any relative resident in the same household. . . .' Contrast this language with the language of the endorsement in question here, which contains no such exclusion. Here, with reference to the occupancy by the named insured of any automobile, the endorsement provides an exclusion only as 'to bodily injury to an insured while occupying an autmobile owned by the named insured and principally garaged in a state which has not authorized the issuance of this insurance.'

"Looking beyond the endorsement itself, we find no language in the policy with reference to occupation or use of an automobile by the named insured which could be con-

strued as limiting the scope of the coverage provided by the endorsement. In any event, any such possible inference is negated by the express language of the endorsement that 'none of the insuring agreements, exclusions or conditions of the policy shall apply to the insurance afforded by this endorsment except' certain specified conditions, none of which have any possible application to the issues here presented.

"In *Gulf American Fire & Casualty Co.* v. *McNeal* (1967), 115 Ga. App. 286, 154 S. E. 2d 411, the named insured owned three automobiles, but the uninsured motorist endorsement provided coverage with respect to 'Car No. 3 only.' The wife and son of the named insured were injured while riding in the car designated as 'Car No. 2' in the general policy of insurance. The court held that 'the effect of the restriction contained in the endorsement limiting the uninsured motorist coverage to *'Car No. 3 only'* was merely to exclude Car No. 1 and Car No. 2 from the policy definition of *'insured automobile'* under the uninsured motorists coverage, so that this coverage would be afforded to *other persons* only while occupying Car No. 3.

"As here, the language of the endorsement in the Georgia case did not contain any specific language of limitation such as that contained in the *Webb* case. *Cf. Motorists Mutl. Ins. Co.* v. *Bittler* (Com. Pleas, Cuyahoga County, 1968), 14 Ohio Misc. 23."

The Supreme Court effectively recognized the possibility of proper limitations in its reference to the *Webb* case, alluded, by comparison, to a somewhat different view in the *Bittler* case without any adoption of that decision. Such limitations, of course, must not be repugnant to the statute. *Curran* v. *State Automobile Mutual Ins. Co.* (1971), 25 Ohio St., 2d 33. The most recent decision by our Supreme Court interpreting both the statute and the policy is the case of *Motorists Mutual Ins. Co.* v. *Tomanski* (1971), 27 Ohio St. 2d 222. At page 223 of the opinion, the following appears:

"The right to recover under an uninsured motorist insurance policy is on the contract, not in tort. *Fouquier* v.

*Travelers Insurance Company* (La. App. 1967), 204 So. 2d 400; *Hobbs* v. *Buckeye Union Casualty Company* (1962), 212 F. Supp. 349.''

At page 226:

''This court has refused to change the meaning of language contained in an insurance contract when that wording is directly applicable to the facts under consideration, and will not read into a contract meaning which was not placed there by an act of the parties. *Olmstead* v. *Lumbermen's Mutual Insurance Company* (1970), 22 Ohio St. 2d 212, 216; *Garlick* v. *McFarland* (1953), 159 Ohio St. 539, 545; *First National Bank* v. *Houtzer* (1917), 96 Ohio St. 404.''

Neither is it the function of a court to rewrite the policy. The court refused to so do in the *Tomanski* case, as did the author of the opinion in the *Bittler* case in the later case of *Roskin* v. *Aetna Ins. Co.* (1970), 25 Ohio Misc. 95.

The instant case is identical in fact pattern and policy provisions as those in the case of *Fletcher* v. *State Security Insurance Company* (1969), 114 Ill. App. 2d 91; 254 N. E. 2d 650, certiorari or appeal denied or dismissed. The syllabus thereof reads as follows:

''Where family automobile policy containing uninsured motorist coverage excluded coverage for injuries sustained while occupying automobile owned by insured or relative and policy defined 'insured automobile' to include non-owned automobile while being operated by named insured and defined 'non-owned automobile' as one not owned or furnished for regular use of either named insured or relative, mail truck used by insured who was employed by Post Office was not a 'non-owned automobile' and was excluded from coverage under uninsured motorist provision.''

After quoting identical policy provisions in the uninsured motorists coverage, the same exclusions are recited and decision made at page 652 of the opinion:

''The Exclusion provision of the policy provides;

"Exclusions. This policy does not apply under Part IV:

"(a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile; * * *.

"Part I (Liability) of the policy, which is referred to in the Definitions section of Part IV, contains the following definition:

" 'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile * * *.

"The coverage provision, when read alone, provides coverage to the plaintiff when struck by the operator of an uninsured automobile for damages occasioned by bodily injury in such a collision. If this were the only provision of the policy there would be no question. Paragraph (a) of (Exclusions) excludes coverage while the insured occupies an automobile owned by him or a relative other than an 'insured automobile.' The postal truck in question was not owned by the insured or a relative and, therefore, the language outside the parentheses, as above quoted, is not applicable. However, the language inside the parenthesis provides that he is covered when he is occupying 'an insured automobile.'

"Under the section entitled 'Definitions,' 'insured automobile' is defined in four subparagraphs. Paragraph (d), pertinent here, identifies a 'non-owned automobile while being operated by the named insured' as an 'insured automobile.' A 'non-owned automobile' is not defined in Part IV of the policy; however, under the last quoted section, the definitions set forth under Part I apply. Part I (Liability) defines a non-owned automobile as one 'not owned by or furnished for the regular use of either the named insured or any relative * * *.'

"Accordingly, we hold that the mail truck used by the plaintiff was furnished for his regular use and, con-

sequently, not a 'non-owned automobile' as defined by this specific policy and, therefore, excluded from coverage under the uninsured motorist provision of the defendant's policy."

It might be argued that the exclusion clause is ambiguous, but the Illinois Court did not find it so.

Finally and in summary, the court in a given case determines whether the policy coverage is repugnant to the statute, as was done in *Curran* v. *State Automobile Insurance Company*, 25 Ohio St. 2d 33, paragraph 1 of the syllabus. The Supreme Court there held an "other insurance" clause to be contrary to the legislative intent, but that is not to say that all limitations are invalid, or that coverage will be extended to a vehicle which is not otherwise covered by a policy. This latter postulate was so recognized in the *Wright* case, *i. e.*, that vehicles may be excluded from coverage.

As observed by the court in the *Curran* case at page 38, the coverage required by the statute is "for the protection of persons insured thereunder. * * *" Based on the foregoing authorities, this court concludes that (1) defendant is not a person insured under the present facts and policy, and (2) no coverage is afforded while operating a government vehicle furnished for his regular use in connection with his employment with the Post Office Department.

The court finds on the issues in favor of the plaintiff and against defendant. Summary judgment will be rendered accordingly, upon submission of proper entry.