DEMETRY, Admr., Appellant,

v.

KIM et al.; Midwestern Indemnity Company, Appellee.

[Cite as *Demetry v. Kim* (1991), 72 Ohio App.3d 692.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–1408.

Decided Feb. 26, 1991.

*Paul O. Scott* and *Diane Politi,* for appellant.

*Isaac, Brant, Ledman & Becker* and *Donald L. Anspaugh,* for appellee.

HINES, Judge.

Plaintiff-appellant, Mark Neil Demetry, as administrator of the estates of Mary Denise Demetry and Michelle Nicole Demetry, appeals from the adverse judgment of the Franklin County Court of Common Pleas entered on his complaint for declaratory judgment against defendant-appellee, Midwestern Indemnity Company, and raises the following assignments of error:

"Assignment of Error I

"The trial court erred in applying the language of the motor vehicle liability provision in the Midwestern Indemnity policy to underinsurance imposed as a matter of law.

"Assignment of Error II

"In the alternative, the trial court erred in failing to place the burden of proof on the defendant-appellee with respect to the exclusionary clause of the Midwestern Indemnity policy."

Mary Denise Demetry and her unborn child, Michelle Nicole Demetry, were killed on August 24, 1987, while Mrs. Demetry was operating her automobile within the course and scope of her employment with Homestead Mortgage Company. Appellant, the husband and father of the decedents, was named administrator of their estates.

The fatal collision arose from the negligence of defendants, Bobby Jae Kim and Harry C. Price, as determined by a jury. Appellee was not a party to this action. Both defendants were covered by liability coverage in the amounts of $100,000 per person and $300,000 per occurrence. The policy limits were surrendered to appellant after the jury verdict. Thereafter, appellant amended his complaint to include appellee as a party-defendant. Appellant sought a declaratory judgment as to Mrs. Demetry's right to underinsured motorist coverage under a "special business owner's policy" issued to Homestead by appellee, which provided $1,000,000 of general business liability coverage.

The parties filed cross-motions for summary judgment regarding whether the business liability policy was required to offer underinsured motorist coverage as a matter of law and, if so, whether appellant's decedents were covered under the terms of the policy. Partial summary judgment was rendered in favor of appellant finding that the umbrella business liability provisions of the policy provided automobile liability coverage as that term is used in R.C. 3937.18. Thus, the trial court found that appellee was required to offer underinsured motorist coverage as a matter of law. However, the trial court reserved for jury determination the question of whether appellant's

decedents were covered by the policy's exclusionary language to the effect that occasional drivers only were covered. Specifically, the issue submitted for jury determination was whether Mrs. Demetry was an infrequent or occasional user of her automobile for Homestead business purposes.

The jury returned a verdict in favor of appellee. The court, having impliedly ruled in its summary judgment determination that the exclusions of the liability policy were applicable to the underinsured coverage imposed by law, entered final judgment for appellee on November 8, 1988 and this appeal ensued.

■ By his first assignment of error, appellant contends that the trial court erred by applying the exclusionary language contained in the motor vehicle liability coverage to the underinsured coverage implied as a matter of law. No appeal has been taken from the trial court's determination that the special business owner's policy provided automobile liability coverage or that R.C. 3937.18 mandates the imposition of underinsured coverage by operation of law. Therefore, the sole question presented by this appeal is whether the exclusionary provisions contained in the underlying liability policy apply to underinsured coverage implied as a matter of law.

The parties have not cited, nor has our research revealed, any case law directly on point. Therefore, we must begin with a more basic discussion of Ohio's uninsured/underinsured motorist law and apply fundamental principles to this new situation.

The statutory basis for uninsured/underinsured motorist coverage is contained in R.C. 3937.18, which provides, in pertinent part:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

" * * *

"(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motor-

ist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

Since R.C. 3937.18 became effective on January 1, 1966, the courts have had numerous opportunities to interpret the statute. One of the first and most often-cited cases is *Motorists Mut. Ins. Co. v. Bittler* (1968), 14 Ohio Misc. 23, 43 O.O.2d 64, 235 N.E.2d 745. In *Bittler*, the court determined that, under a standard uninsured motorist endorsement, coverage is not excluded where the named-insured is injured while driving an automobile furnished for his regular business use. It was unnecessary that the named-insured was driving an insured automobile as defined in the liability policy to which the endorsement was attached. The court reasoned that R.C. 3937.18 mandates uninsured/underinsured coverage in the nature of limited personal accident insurance. The endorsement is to be construed as insuring the person and not the automobile. Therefore, the court stated that the plaintiff would have been covered if he was " * * * sitting in his rocking chair on his front porch." *Id.* at 33, 43 O.O.2d at 69, 235 N.E.2d at 751. *Bittler* was cited with approval by this court in *Buckeye Union Ins. Co. v. Bradley* (1972), 33 Ohio App.2d 144, 61 O.O.2d 482, 293 N.E.2d 109.

The following year the Supreme Court continued this same line of thought in *Ohio Farmers Ins. Co. v. Wright* (1969), 17 Ohio St.2d 73, 46 O.O.2d 404, 246 N.E.2d 552. The court held that, in the absence of specific exclusionary language, recovery is not precluded when the named-insured is injured while operating a vehicle that was included as an insured automobile under the liability provision of the policy but not mentioned as an insured automobile under the uninsured/underinsured endorsement. The Supreme Court also noted that a contract of insurance is to be construed liberally in favor of the insured and strictly against the insurer.

The Supreme Court expressly embraced the theory that coverage is personal and not automobile insurance in *Motorists Mut. Ins. Co. v. Tomanski* (1971), 27 Ohio St.2d 222, 56 O.O.2d 133, 271 N.E.2d 924. Quoting *Horne v. Superior Life Ins. Co.* (1962), 203 Va. 282, 285, 123 S.E.2d 401, 404, the court stated:

" 'It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in the event of an accident.' * * * * " *Tomanski, supra,* at 224, 56 O.O.2d at 134, 271 N.E.2d at 925.

*Tomanski* is also cited for the proposition that recovery under uninsured/underinsured motorist insurance is founded in contract and not in tort.

Subsequent cases elaborated on the contractual nature of uninsured/underinsured coverage and began to introduce the notion of freedom of contract. Illustrative of this trend is *Ady v. West American Ins. Co.* (1982), 69 Ohio St.2d 593, 23 O.O.3d 495, 433 N.E.2d 547. Chief Justice Celebrezze authored the opinion and stated that:

" * * * [S]tatutorily mandated coverage can not be whittled away by private parties. * * * Therefore, any restriction on full coverage should emanate from the General Assembly * * *." *Id.* at 596–597, 23 O.O.3d at 497, 433 N.E.2d at 549.

However, *Ady* was a plurality opinion and it cannot be cited for anything other than the syllabus, which provides:

"Any contractual restriction on the coverage mandated by R.C. 3937.18 must comply with the purpose of this statute. (*Orris v. Claudio*, 63 Ohio St.2d 140 [17 O.O.3d 85, 406 N.E.2d 1381], overruled.)"

More often than not, when *Ady* is cited, it is for Justice Holmes' dissent, wherein he speaks extensively of the parties' right to contract and the idea that insurance policies should be treated as contracts and interpreted according to contract principles so long as the exclusions do not contravene public policy. *Ady* highlights the divergence of opinion concerning what that public policy is. One group feeling that full coverage is the norm and any exclusion should be narrowly construed and the other side believing that the parties should be given wide latitude to negotiate their own terms of coverage.

One of the cases citing Justice Holmes' dissent is *Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St.3d 42, 22 OBR 63, 488 N.E.2d 840. The court held that an exclusion contained in the uninsured/underinsured endorsement that denied coverage " * * * [w]hile occupying * * * any motor vehicle owned by you or any *family member* which is not insured for this coverage under this policy * * * " was valid. While continuing to adhere to the policy that uninsured/underinsured coverage is to protect persons and not automobiles, the court reasoned that public policy would allow clear, unambiguous, contractual language to create exclusions if the precise language evidences an intent by the parties to do so.

In light of the foregoing, it would appear that the base-line policy in Ohio is full coverage. This conclusion is amply supported by R.C. 3937.18, as well as the relevant case law. The parties are then free to limit full coverage by bargaining for something less. However, the intent of the parties must be evidenced by clear, unambiguous language contained in the contract. *Hedrick, supra.* In this case, the only evidence we have of the parties' intent is a liability policy, since the parties never envisioned that uninsured/underinsured coverage would be provided. The issue then is, what weight should the

liability exclusionary language be given when underinsured coverage is implied as a matter of law.

The liability provisions of the policy at issue provide, in pertinent part:

"The term 'YOU' or 'YOUR' in this policy means:

" * * *

"5. **Your** employees, while acting within the scope of their duties.

"With respect to Section II:

"Coverage afforded to your employees does not apply to:

"a. **Bodily injury** to **you** or another of **your** employees out of or in the course of employment.

" * * *

"**We** will not pay for **Bodily Injury** or **Property Damage** due to:

" * * *

"7. Any loss resulting from the ownership, maintenance, operation, use on **your** behalf, **loading or unloading** of:

"a. Any **automobile** owned, operated by, rented or loaned to any person or organization included under 'Who is Insured', except:

" * * *

"(2) This exclusion does not apply to the occasional and infrequent use in **your** business of a **non-owned** or **hired automobile** by **you,** or any other person with **your** permission. Coverage for use of a **non-owned** or **hired automobile** is excess insurance over any valid and collectible insurance available to **you.**"

Our review has failed to uncover a case in which liability exclusionary language was imposed upon underinsured coverage implied by law. The closest case appears to be *Duriak v. Globe American Cas. Co.* (1986), 28 Ohio St.3d 70, 28 OBR 168, 502 N.E.2d 620, cited by appellee. In *Duriak*, the injured party was covered under two insurance policies. A primary automobile liability policy that did contain uninsured/underinsured coverage and an excess policy that did not provide uninsured/underinsured coverage. The primary policy contained an expressed, valid one-year limitation period for commencement of an action against the insurer. Furthermore, the excess policy contained a clear and unambiguous provision predicating the availability of excess coverage on strict compliance with the underlying primary policy. The court held that, since the plaintiff had failed to comply with the one-year limitation period contained in the primary policy, then the uninsured/underin-

sured coverage the court had implied by law into the excess policy was unavailable to plaintiff. This conclusion is reasonable given the nature of excess coverage; that is, it should only apply once other sources of compensation have been exhausted. In the present case, other sources of compensation available to the appellant have been exhausted and there is no language similar to that in *Duriak* predicating recovery on compliance with the second named policy. In *Duriak,* the plaintiff failed to comply with a condition precedent of the policy she sought to invoke. Therefore, any provision of the policy, be it liability or implied underinsured coverage, was unavailable. Appellee argues that the liability provision of the policy at issue herein is like the primary policy in *Duriak, i.e.,* to invoke the implied underinsured coverage appellant's decedent must first fit within the liability coverage afforded by the policy. We are unpersuaded by appellant's contentions.

As we have previously stated, there is nothing, absent clear language evidencing an intent to do so, to prevent uninsured/underinsured coverage from being broader than liability coverage. Initial case law interpreting uninsured/underinsured coverage mandated broader coverage since most exclusions were held void. Gradually, as contract principles were applied, more exclusions were held to be acceptable. Applying contract principles to the present action, the liability exclusion, or more precisely the exception to the exclusion, cannot be impressed upon the underinsured coverage implied by law. The parties never intended underinsured coverage to be provided by the policy. As such, there could be no negotiated exclusions intended to be implied to the underinsured coverage. The standard of clear unambiguous language has not been complied with.

This same conclusion can be reached if we resort to the provisions of R.C. 3937.18 as a type of gap filler. R.C. 3937.18 provides for setoff, anti-stacking, and other expressly provided exclusions only. There is nothing in the statute which provides for an exclusion based upon regular business use of a non-owned vehicle. See *Ady, supra; Dairyland Ins. Co. v. Finch* (1987), 32 Ohio St.3d 360, 513 N.E.2d 1324.

■ A contract of insurance is to be construed liberally in favor of the insured and strictly against the insurer. The *Ohio Farmer, supra; King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380. It is the insurer who selects the language of a policy and it is encumbent on the insurer to be specific in its use. *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 543 N.E.2d 488. Uninsured/underinsured coverage has been implied by courts prior to the issuance of this coverage and the appellee, as drafter of

the contract, could have foreseen the potential for such a result and drafted its document accordingly.

Appellant's first assignment of error is sustained.

Appellant's second assignment of error, styled in the alternative, contends that the trial court incorrectly applied the burden of proof to appellant. He argues that because appellant's decedents were denied coverage based upon an exclusionary provision, the burden of showing the applicability of the exclusionary provision falls upon appellee.

Even if we were to determine that the liability policy contained an exclusion and not an exception to an exclusion as argued by appellee, we have determined under the first assignment of error that the exclusionary provision does not apply to the implied by law underinsured coverage and, as such, appellant's second assignment of error has been rendered moot. Furthermore, appellant has argued the assignment of error in the alternative, therefore, placing it before us only if we overruled his first assignment of error which we have not done.

Accordingly, appellant's second assignment of error is overruled.

Appellant's first assignment of error is sustained. Appellant's second assignment of error is overruled and the judgment of the trial court is reversed.

*Judgment reversed*
*and cause remanded.*

STRAUSBAUGH and JOHN C. YOUNG, JJ., concur.

ROBERT B. HINES, J., of the Holmes County Common Pleas Court, sitting by assignment.