I {¶ 89} I concur in the majority's disposition and part of the analysis of appellant's first assignment of error. I agree the conditions and restrictions apply, but I reach this conclusion through a different analysis. Because I authored this Court's Opinion in Burkhart v. CNAInsurance, Stark App. No. 2001CA00265, 2002-Ohio-903, I wish to elaborate my reasons for doing so.
 {¶ 90} This Court has addressed the issue of whether restrictions to and conditions of coverage in the underlying liability policy apply when UIM/UDM coverage arises by operation of law on numerous occasions. On at least three occasions, we found restrictions to and conditions of coverage in the underlying liability policy did not carry over where UIM/UDM coverage was created by operation of law. Burkhart v. CNA Ins.Co., Stark App. No. 2001 CA00265, 2002-Ohio-903; Myers v. Safeco Ins.Co. of America (Feb. 18, 2000), Licking App. No. 99CA00083, unreported; and Butcher v. Lewis, Stark App. No. 2001 CA00219, 2002-Ohio-3343.[4]
 {¶ 91} Our decisions in Butcher and Myers analyzed a commercial general liability policy and a homeowners policy, respectively. In both cases, we found UIM/UDM coverage arose by operation of law pursuant to R.C. 3937.18. Because UIM/UDM coverage arose by operation of law, we further found restrictions to and conditions of coverage in the respective underlying liability policies did not carry over to UIM/UDM coverage pursuant to the law set forth in Scott-Pontzer and Demetry v.Kim, infra.
 {¶ 92} In Myers, this Court relied upon Demetry v. Kim (1991),72 Ohio App.3d 692, 595 N.E.2d 997. In Demetry, the Tenth District reasoned because "[t]he parties never intended underinsured coverage to be provided by the [business auto] policy, * * * there could be no negotiated exclusion intended to be implied to the underinsured coverage", which arose by operation of law. Id. at 698. The Demetry court noted there is nothing to prevent uninsured/underinsured coverage from being broader than liability coverage. Id.
 {¶ 93} In Scott-Pontzer, the Ohio Supreme Court cited the rational of Demetry with approval, holding the restriction of coverage found in the umbrella liability policy did not apply to the UIM coverage created by operation of law. Id. at 666. There is no reason to believe the Ohio Supreme Court's treatment of conditions to coverage would be different from its treatment of restrictions to coverage in Scott-Pontzer when the UIM/UDM coverage arises by operation of law pursuant to R.C. 3937.18.
 {¶ 94} In Burkhart, this Court was called upon to analyze a business auto policy which contained a UIM/UDM endorsement, a commercial general liability policy and a commercial umbrella liability policy. The insurer, Continental, argued no coverage existed under the business auto policy because the Burkhart plaintiffs failed to comply with the policy provisions relative to notice and the protection of subrogation rights. This Court summarily rejected the insurer's argument citing Myers v.Safeco, supra, and Martin v. Liberty Mut. Ins Co. (2001),187 F. Supp. 896.[5] In relying upon Myers andMartin, this Court held UIM/UDM coverage under the business auto policy was not unavailable because of plaintiff's failure to obtain the insurer's consent to release all claims against the tortfeasor. For the reason cited by the majority, the Burkhart court's reliance onMyers for this conclusion was wrong. Maj. Op. at 6.
 {¶ 95} In Martin, the Federal District Court excused the plaintiff from protecting the insurer's subrogation rights against the tortfeasor, reasoning "[b]efore the holding in Scott-Pontzer, which was issued in June of 1999, Plaintiffs, and other [sic] similarly situated, could not predict that they would be covered under their employer's insurance policy, even when outside the scope of employment, and that such coverage could include underinsured motorist coverage." Martin, supra at 904.
 {¶ 96} Upon reconsideration of Martin, I find its rational less persuasive than I did when I authored this Court's opinion in Burkhart.Scott-Pontzer did not represent a change in any existing law of which I am aware. The fact plaintiffs could not predict the result inScott-Pontzer provides little justification for finding plaintiffs are thereby legally excused from the notice and consent provisions in a commercial general liability, commercial auto, or commercial umbrella policy where UIM/UDM coverage is created by contract rather than by operation of law. The plaintiffs in Scott-Pontzer could, and did, predict coverage under the plaintiff's employer's insurance policy, even where the plaintiff-employee was outside the scope of employment. Coverage did not arise when Scott-Pontzer was decided. Rather, it was first judicially recognized when Scott-Pontzer was decided. Inherent in the Scott-Pontzer
decision is the concept that UIM/UDM coverage arose at the time the commercial auto liability policy and umbrella policy were initially issued. As such, I now find Martin's "predictability" rationale to be of little persuasive value.
 {¶ 97} I now believe that portion of Burkhart which found UIM/UDM coverage under the business auto policy to have been wrongly decided. If UIM/UDM coverage arises by operation of law, failure to comply with restrictions to or conditions of coverage in the underlying liability policy do not "invalidate" UIM/UDM coverage. However, where UIM/UDM coverage exists as a matter of contract, restrictions to or conditions of coverage found in the policy are valid and enforceable against "Scott-Pontzer" type insureds.
 {¶ 98} How the plaintiff's status as an insured arises, whether as a named insured within the policy or as a result of a Scott-Pontzer
ambiguity, does not bear on the issue of the enforceability of conditions of the insurance contract. Once determined to be an insured, the validity of restrictions to or conditions of UIM/UDM coverage depends upon whether the UIM/UDM coverage arises by operation of law under R.C. 3937.18 or by contract.[6]
 {¶ 99} In the case sub judice, the UIM/UDM coverage under Federal's commercial auto policy arises as a matter of contract. As such, I agree with the majority and trial court appellant's failure to comply with the notice and consent provisions relieve Federal from its obligation to pay under the UIM/UDM coverage in its business auto policy.
 II {¶ 100} I respectfully dissent from the majority's analysis and disposition of appellant's second assignment of error. I would sustain this assignment of error and reverse the trial court's decision no coverage exists under the Great Northern general commercial liability policy.
 {¶ 101} In finding no UIM/UDM coverage existed, the trial court relied upon this Court's decision in Cox v. State Farm, Licking App. No. 2001CA00117, 2002-Ohio-3076.
 {¶ 102} The trial court cited Cox, supra, for the proposition this Court has found the coverage afforded by the valet parking exception to be incidental coverage for a very specific circumstance; therefore, insufficient to convert a commercial liability policy into a motor vehicle liability policy. December 12, 2001 Judgment Entry at 7.
 {¶ 103} The trial court's reliance upon Cox for this proposition is in error. In fact, Cox found the valet parking exception did convert a commercial general liability policy into a motor vehicle policy for purposes of R.C. 3937.18. Cox, supra, at para. A-A-19. In Cox, this Court cited Burkhart, supra, at 9, with approval. In Burkhart, we reviewed a similar provision in a commercial general liability policy and concluded the policy expressly provided coverage, in a limited form, for motor vehicles. Id. at 9. As such, we found Selander v. Erie Ins. Group,85 Ohio St.3d 541, 544, 1999-Ohio-287, 709 N.E.2d 1161, not Davidson v.Motorists Mut. Ins. Co., 91 Ohio St.3d 262, 2001-Ohio-36, 744 N.E.2d 713, to be applicable.
 {¶ 104} The majority concludes the "valet parking" provision in the Great Northern policy is not truly a motor vehicle provision but a property damage provision which does not pertain to any motor vehicle operation, but rather to coverage of the automobile body itself. Maj. Op. at 10. I disagree. The policy provides coverage for both bodily injury or property damage arising out of the parking of an auto on or next to the insureds premises provides said auto is not owned by, rented or loaned to such insured. The phrase "arising out of the parking of an auto" is capable of broad interpretation and would include autos required to be registered and intended to be operated on a public highway. Though this coverage is incidental to the commercial general liability policy, it nevertheless provides motor vehicle liability coverage.
 {¶ 105} For the reasons set forth in Burkhart and Cox, I find the trial court erred in its determination the Great Northern policy was not a motor vehicle liability policy pursuant to Selander. I further find UIM/UDM coverage arose by operation of law because Great Northern failed to comply with the mandates of R.C. 3937.18,
 {¶ 106} Having determined the Great Northern policy provides UIM/UDM coverage by operation of law, I now turn my attention to the question of who was an insured under the policy. The policy defines an insured in four ways. These insureds included an individual in a sole proprietor context, a partner in a partnership context, and a corporation in an "organization other than a partnership." Additionally, this section indicates employees are also "an insured."
 {¶ 107} In its December 12, 2001 Judgment Entry, the trial court found Cox to be controlling in reaching its decision appellant was not an insured under the policy because he was not acting within the scope of his employment at the time of the accident.
 {¶ 108} In Cox, this Court found Wayne Cox was an insured within the general provisions of the policy regardless of Scott-Pontzer. Cox at para. A — A23. Because it found Scott-Pontzer did not apply, the Cox Court found the provisions which excluded coverage in the liability portion of the policy carried forward into the UIM/UDM coverage arising by operation of law, pursuant to a Selander analysis. I believe this portion of the Cox decision was wrongly decided, although the result reached therein was correct because the commercial general liability policy in Cox did not extend to family members of employees.
 {¶ 109} Based upon the policy definition of who is an insured set forth above, I find a Scott-Pontzer ambiguity exists in the Great Northern policy. The definition of an insured states "Who is an Insured: 1. If you are `an organization other than a partnership or joint venture, you are an insured.'" This language is sufficiently similar to the language in Scott-Pontzer to create an ambiguity creating UIM/UDM coverage by operation of law for the corporation. As in Scott-Pontzer, because a corporation cannot suffer personal injury, it is only reasonable to conclude the "you", when referring to the corporation, also includes the corporation's employees, because "the corporation can act only by and through real live persons." "It would be nonsensical to limit protection solely to the corporate entity, since the corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." Scott-Pontzer, supra at 664. "[N]aming the corporation as an insured is meaningless unless the coverage extends to some person or persons — including to the corporations employees." Id. As did the Supreme Court in Scott-Pontzer, we find the use of the language "Who is an Insured * * * If you are: c. [a corporation], you are an insured" creates the same ambiguity examined in Scott-Pontzer. For a similar result see, e.g., Burkhart, supra, and Hopkins v. Dyer, Tuscarawas App. Nos. 2001AP080087 and 2001AP080088, 2002-Ohio-1576.
 {¶ 110} There is another provision in the "Who is an insured" portion of the Great Northern policy which defines "your employees" as insureds. Accordingly, the next question to address is whether the inclusion of individual insureds destroys the ambiguity created through the corporate "you" language discussed, supra. I find that it does not.
 {¶ 111} This Court has addressed this issue in both Burkhart andHopkins, supra. In each of those cases, the policies provided named individuals in addition to the corporate "you" language. Although the policy in the matter sub judice does not contain the names of specific individuals, the inclusion of different classes of individual insureds does not act to destroy the ambiguity created by the corporate "you" language. I would adhere to our previous decisions and for the reasons stated therein, and find the trial court erred in its determination no ambiguity existed in the provisions defining insureds. See also,Morgenstern v. Cincinnati Ins. Co., Delaware App. No. 01CA-E-12-065, 2002-Ohio-4049. I further note appellant herein would be an insured even without the Scott-Pontzer ambiguity. In Butcher v. Lewis, supra, this Court again refused to carry over restrictions to coverage contained in a commercial general liability policy to UIM/UDM coverage which arose by operation of law. In Butcher, like the matter sub judice, the comprehensive general liability policy included within the definition of an insured, "employees who are acting within the scope of their employment." Id. at 4. After an extensive analysis of Scott-Pontzer, this Court found the analysis contained therein to be applicable, notwithstanding the factual distinctions.
 {¶ 112} In Butcher, because the UIM/UDM coverage arose by operation of law, we found the language in the commercial general liability policy, limiting coverage to employees acting within the scope of their employment to be inapplicable. See, also, Brodbeck v.Continental Cas. Co., Lucas App. No. L-01-1269, 2002-Ohio-532 (holding: "pursuant to the Scott-Pontzer doctrine, * * * the scope of employment exclusion applies solely to excess liability coverage and not to UIM coverage that has arisen by operation of law."). I find the limitation on coverage contained in the definition itself not to be of significant difference from a separate restriction to coverage set forth in a different area of the policy listing exclusions. The fact the restriction is contained in the definition has no bearing on whether the restrictions carry over to UIM/UDM coverage arising by operation of law. This is in accord with the analysis contained in Demetry, cited with approval by the Ohio Supreme Court in Scott-Pontzer. Scott-Pontzer, supra at 666. Because the parties did not contemplate UIM/UDM coverage, they could not have contemplated any restrictions applying to UIM/UDM coverage arising by operation of law.
 {¶ 113} In other words, having found UIM/UDM coverage arose by operation of law pursuant to Selander, I also find appellant was an insured. This is so either because of the Scott-Pontzer ambiguity or because appellant qualifies under the employee provision in the "WHO IS AN INSURED" section. As the restrictions and conditions contained in the underlying policy do not apply to UIM/UDM coverage arising by operation of law, appellant was an insured entitled to UIM/UDM coverage.
 III {¶ 114} I concur in the majority's disposition and generally concur in its analysis of appellant's third assignment of error.
 {¶ 115} However, I believe there is a significant difference between finding no coverage exists as opposed to finding the insurer is relieved of its obligation to pay pursuant to that coverage because of failure to comply with notice and consent to settlement provisions.[7]
Coverage arises prior to the insureds obligation to provide notice or secure the insurer's consent to any settlement. Failure to do so by the insured does not negate one's status as an insured but rather relieves the insurer of its obligation to pay.
 IV, V {¶ 116} I fully concur in the majority's analysis and disposition of appellant's fourth and fifth assignments of error.
 VI {¶ 117} I respectfully dissent from the majority's analysis and disposition of appellant's sixth assignment of error.
 {¶ 118} The majority's disposition is premised, in part, upon its conclusion in appellant's third assignment of error appellant is not entitled to coverage under the Northbrook business auto policy because he failed to abide by its terms. The majority's disposition is also premised, in part, upon its conclusion in appellant's fourth assignment appellant was not insured under the St. Paul Mercury commercial general liability policy.
 {¶ 119} While I agree appellant's failure to qualify as an insured under St. Paul Mercury's commercial general liability policy precludes him from acquiring the status of an insured under the St. Paul Fire umbrella policy based on a vertical comparison between those two policies,[8] I find the majority's premise for concluding appellant is not entitled to protection under the Northbrook business auto policy does not impact his status as an insured thereunder for the reason set forth in my discussion of appellant's third assignment of error, supra.
 {¶ 120} In appellant's sixth assignment of error, he maintains the trial court erred in granting summary judgment to St. Paul Fire with regard to the excess umbrella policy St. Paul Fire issued to Timken Mercy Medical Center. Specifically, appellant argues the trial court erred in finding the UIM/UDM coverage which arose by operation of law under the umbrella policy was invalidated as a result of appellant's failure to give St. Paul prompt notice of his claim. I agree.
 {¶ 121} In its December 12, 2001 Judgment Entry, the trial court found appellant was an insured pursuant to the policy. However, the trial court also found appellant was not entitled to UM/UIM coverage under the umbrella policy because appellant had failed to provide timely notice of his UM/UIM claim. I disagree with the trial court and the majority the St. Paul Fire umbrella policy did not provide coverage to appellant.
 {¶ 122} Unlike the majority, the trial court found appellant was an insured under the umbrella policy on the basis of the following language:
 {¶ 123} "Who Is Protected For Auto-Related Claims.
 {¶ 124} "This section describes who is protected for claims arising out of the use of autos.
 {¶ 125} "You.
 {¶ 126} "Protected persons under your Basic Insurance. We'll protect any other person or organization who is protected under your Basic Insurance subject to the same coverage limitations as your Basic Insurance."
 {¶ 127} The trial court found the use of the word "you" in the above quoted section to be an ambiguity similar to Scott-Pontzer. Accordingly, the trial court found "you" could include appellant as an insured. I agree.
 {¶ 128} In addition to protected persons covered under Timken Mercy Medical Center's Basic Insurance, the umbrella policy also specifically provided coverage for "a member of an employee's household", but only "while using with your permission an auto you own, rent or borrow" See pgs. 4 and 5 of Umbrella/Excess Liability Protection, Form 43942, of the St. Paul Fire policy. Accordingly, I find liability coverage was extended to household members of employees of Timken Mercy Medical Center, albeit to a limited extent, in the umbrella policy itself. Under this provision, appellant's status as an insured in not dependent upon whether he is an insured under either the Northbrook or St. Paul Mercury liability policies.
 {¶ 129} Because UIM/UDM coverage was not offered with the St. Paul Fire umbrella coverage, it arises by operation of law pursuant to R.C.3937.18. As set forth in my discussion of appellant's first and second assignments of error, restrictions to or conditions of coverage in the liability policies do not apply where UIM/UDM coverage arises by operation of law.
 {¶ 130} I find the trial court erred in concluding no coverage existed under the St. Paul Fire's umbrella policy.
 VII {¶ 131} I respectfully dissent from the majority's disposition of appellant's seventh assignment of error.
 {¶ 132} In appellant's seventh assignment of error, he maintains the trial court erred in granting summary judgment to State Farm. Specifically, appellant asserts the trial court should have found UIM/UDM coverage arose by operation of law pursuant to the homeowner's insurance policy which covered appellant. At issue herein is a provision in the homeowner's policy which provides coverage for injuries to a "residence employee."
 {¶ 133} This Court has previously addressed the issue of whether the residence employee provision in a homeowner's policy could be construed so as to provide UIM/UDM coverage. See, e.g., Mattox v.Allstate Ins. Co., Stark App. No. 2001CA218, 2002-Ohio-1453. In each instance, this Court found the residence employee provision contained in a homeowner's policy to be insufficient to create coverage for "motor vehicle liability" requiring an offer of UIM/UDM coverage pursuant to R.C. 3937.18.
 {¶ 134} In Davidson v. Motorists Mut. Ins. Co. (2001),91 Ohio St.3d 262, the Ohio Supreme Court held: "A homeowner's insurance policy that provides limited liability coverage for vehicles that are not subject to motor vehicle registration and that are not intended to be used on a public highway is not a motor vehicle liability policy and is not subject to the requirement of former R.C. 3937.18 to offer uninsured and underinsured motorist coverage." Id. at 269.
 {¶ 135} In so holding, the Davidson Court reaffirmed the holding in Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541, but made a distinction between the policies at issue in Selander and Davidson. InSelander, the Court reviewed a commercial general liability policy, which specifically provided coverage for injuries for accidents involving "hired" or "non-owned" automobiles. In contrast, the homeowner's policy at issue in Davidson did not include coverage for liability arising out of the use of motor vehicles generally. Rather, the policy only provided incidental coverage to a narrow class of motorized vehicles which were not subject to motor vehicle registration, and were designed for off-road use or use around an insured's property.[9] The Davidson court analyzed the differences between the policies and found the policy in Selander to be an automobile liability or motor vehicle policy because there was express liability coverage arising from the use of automobiles.
 {¶ 136} The Davidson court stated: "* * * [I]t makes perfect sense to allow UM/UIM coverage in Selander but to restrict recovery under a homeowner's policy that provides incidental coverage for a very limited class of motorized vehicles that are neither subject to motor vehicle registration nor designed to be used on a public highway.
 {¶ 137} "* * *
 {¶ 138} "It makes perfect sense, then, to include coverage in homeowner's policies for off-road and similar vehicles that are used around the insured premises but to limit UM/UIM coverage to vehiclesdesigned for highway use. Common sense alone dictates that neither the insurer nor the insured bargained for or contemplated that such homeowner's insurance would cover personal injuries arising out of an automobile accident that occurred on a highway away from the insured's premises." Id. at 268-269. (Emphasis added).
 {¶ 139} The syllabus language of Davidson is clear. The inclusion of coverage of vehicles which will not be registered and are not intended for use on public roads does not transform a homeowner's policy into a motor vehicle policy requiring the offer of UM/UIM coverage. Because the policy at issue herein does, in fact, include a provision in the homeowner's policy which provides coverage for cars — cars registered with the bureau of motor vehicles and cars driven on public roads — the holding in Davidson is inapplicable. Given the above-quoted language of the court in Davidson, and the distinctions the Supreme Court drew between the policies involved in Davidson andSelander, I conclude the policy at issue sub judice falls within the Court's analysis in Selander. I note my agreement with the well-reasoned analysis by the Tenth District Court of Appeals in Lemm v. The Hartford, supra.
 {¶ 140} Therefore, the appropriate test to apply is set forth inSelander: "Where motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided. ."Selander at 1161, 1163.
 {¶ 141} The policy at issue is a homeowner's policy which provides coverage for liability arising from the use of automobiles which are subject to motor vehicle registration and designed for and used for transporting people on a public highway. The policy provides express liability coverage for damages arising from a motor vehicle accident when the injured party is the homeowner's residence employee, and the injury occurred in the course of that employment. Thus, it is a motor vehicle liability policy subject to the former R.C. 3937.18, requiring an insurer to offer UIM/UDM coverage.
 {¶ 142} Accordingly, I would sustain appellant's seventh assignment of error.
[4] After identifying the different composition of this Court's panels in Myers and Burkhart, the majority finds we are not bound by Myers as precedence because it contains a different fact pattern than Burkhart. Maj. Op. at 6, Fn 2. I suggest we are not bound by either as they were both unreported cases.
[5] The citation in Burkhart citing to Martin v. Midwestern IdemnityCo. is incorrect.
[6] In this regard, I disagree with the conclusion reached by this Court in Cox v. State Farm, Licking App. No. 2001 CA 00117, 2002-Ohio-3076. Therein, this Court held because the appellant was a named insured within the general provisions of the commercial general liability policy, Scott-Pontzer did not apply and the policy provisions restricting coverage carry forward into the UIM/UDM coverage created by operation of law.
[7] This distinction becomes important to my reason for dissenting from the majority's disposition of appellant's sixth assignment of error, infra.
[8] I emphasize the vertical relationship between the St. Paul Mercury and St. Paul Fire umbrella policy because I find appellant's status as an insured under the St. Paul Fire umbrella policy arises from its own terms, independently of or horizontally from the St. Paul policy. See my decision, infra.
[9] "Although the policy in Davidson contained a residence employee exclusion, similar to the one in this case, the Supreme Court declined to decide the issue concerning the residence employee exclusion because it had not been argued to the lower courts in that case. See Davidson, at 265, fn. 2." Lemm v. The Hartford, (Oct. 4, 2001), 10th Dist., CA No. 01-AP-251, unreported.