OPINION
{¶ 1} On July 28, 1991, Jeffrey Greene was operating a vehicle wherein his wife, Kande Greene, was a passenger. At the time, Mrs. Greene was seven and one-half months pregnant. A vehicle operated by James Wright struck the Greene vehicle. Several hours after the accident, Mrs. Greene gave birth by emergency C-Section to Nathaniel Greene. Nathaniel suffered brain damage, including cerebral palsy and delayed development.
 {¶ 2} At the time of the accident, Mrs. Greene was employed with Wadsworth Alert Laboratories, Inc., insured under a commercial automobile policy issued by Westfield Insurance Company and an umbrella policy issued by appellant, Cincinnati Insurance Company.
 {¶ 3} On May 31, 2001, appellee, Kande Greene, as mother and next friend of Nathaniel Greene, a minor, filed a complaint on behalf of Nathaniel seeking underinsured motorist coverage under the Westfield and Cincinnati policies.[1] All parties filed motions for summary judgment. On December 19, 2001, Westfield settled and agreed to pay its $500,000 limit of underinsured motorist coverage to Nathaniel. By judgment entry filed April 1, 2002, the trial court found in favor of appellee under the Cincinnati policy, and referred the matter to binding arbitration.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 {¶ 5} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT CONCLUDED THAT CINCINNATI'S STAND ALONE EXCESS POLICY PROVIDES UNINSURED/UNDERINSURED MOTORIST COVERAGE TO NATHANIEL GREEN."
II
 {¶ 6} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO GIVE EFFECT TO THE NOTICE PROVISION IN CINCINNATI'S STAND ALONE POLICY."
III
 {¶ 7} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ORDERED ARBITRATION OF THE UIM CLAIM AGAINST CINCINNATI."
IV
 {¶ 8} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT CONCLUDED THAT THE PLAINTIFF IS NOT JUDICIALLY ESTOPPED FROM BRINGING A UM/UIM CLAIM AGAINST CINCINNATI."
 I {¶ 9} Appellant claims the trial court erred in finding uninsured/underinsured motorist coverage to Nathaniel under its umbrella policy. We disagree.
 {¶ 10} It is undisputed that the underlying Westfield policy covered appellee pursuant to Scott-Pontzer v. Liberty Mutual FireInsurance Co., 85 Ohio St.3d 660, 1999-Ohio-292. It is also undisputed that uninsured/underinsured motorist coverage arises under the umbrella policy by operation of law.[2]
 {¶ 11} Appellant argues because the umbrella policy is a "stand alone" policy, appellee is not an insured under the policy's definition of "Who Is An Insured" and therefore is not entitled to coverage. Appellee argues if there is coverage under the underlying policy, there is coverage under the umbrella policy regardless of the umbrella policy's language. Appellee also argues the subject policy is not a "stand alone" policy. In support of this position, appellee points to the language contained in the policy at Part II — The Coverage, Section A, which states as follows:
 {¶ 12} "We will pay on behalf of the the (sic) Insured the ultimate net loss for occurrences during the policy period in excess of the underlying insurance or for occurrences covered by this policy which are either excluded or not covered by underlying insurance because of Personal Injury, Property Damage, or Advertising Liability anywhere in the world."
 {¶ 13} Appellant argues appellee is excluded as an insured under the policy pursuant to the definition of "Who Is An Insured" which states as follows:
 {¶ 14} "D. Who Is An Insured — Persons Or Organizations We Will Cover
 {¶ 15} "Each of the following is an Insured under this policy to the extent set forth below:
 {¶ 16} "(a) The Named Insured as shown in the Declarations * * *.
 {¶ 17} "(b) If the Named Insured designated in the declarations is an individual, you are an Insured but only for the conduct of a business of which you are the sole proprietor, and your spouse is an Insured for the conduct of such a business.
 {¶ 18} "(f) Any executive officer, director, other employee or stockholder of yours while acting within the scope of his duties as such." See, Part II, Section D, at Pages 3-4 of 7, attached to Plaintiff's January 28, 2002 Motion for Summary Judgment as Exhibit G.
 {¶ 19} Appellant claims this definition does not includeScott-Pontzer type language that gives rise to ambiguity regarding the definition of "you." In addition, the definition restricts coverage to those employees "acting within the scope" of their duties. We are all painfully aware of the Scott-Pontzer "you" definition in commercial automobile policies. However, the Scott-Pontzer court also reviewed an umbrella/excess policy which included "scope of employment" language similar to the language in the Cincinnati policy. See, Liberty Mutual Insurance Company's Umbrella Excess Liability Policy language reviewed by the Supreme Court of Ohio in Scott-Pontzer, attached to Plaintiff's February 11, 2002 Memorandum in Opposition as Exhibit AA. The court found uninsured/underinsured motorist coverage by operation of law and disregarded any restrictions therein:
 {¶ 20} "On the other hand, Liberty Mutual's umbrella/excess insurance policy did restrict coverage to employees acting within the scope of their employment. However, we have already found that Liberty Mutual had failed to offer underinsured motorist coverage through the umbrella policy issued to Superior Dairy. Thus, any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess liability
coverage and not for purposes of underinsured motorist coverage. See, e.g., Demetry v. Kim (1991), 72 Ohio App.3d 692, 698, 595 N.E.2d 997, 1001. Therefore, there is no requirement in the umbrella policy that Pontzer had to be acting during the scope of his employment to qualify for underinsured motorist coverage. Therefore, appellant is entitled to underinsured motorist benefits under the Liberty Mutual umbrella policy as well." Scott-Pontzer at 666.
 {¶ 21} The policy sub judice contains a very similar restriction. Clearly, the Scott-Pontzer court held such a restriction would not be read into an operation of law uninsured/underinsured motorist coverage scenario and found the restriction to be inapplicable.
 {¶ 22} Regardless of any distinction between a "follow form" and a "stand alone" policy, we find, using the Supreme Court of Ohio's reasoning in Scott-Pontzer, appellee is entitled to coverage under the umbrella policy issued by Cincinnati.
 {¶ 23} Assignment of Error I is denied.
 II {¶ 24} Appellant claims the trial court erred in not enforcing the notice provisions of the umbrella policy. We disagree.
 {¶ 25} When coverage arises by operation of law, as discussed supra, notice and subrogation provisions are unenforceable. See, Rohr v.The Cincinnati Insurance Co., Stark App. No. 2001CA00237, 2002-Ohio-1583, at 20, wherein this court refused to "impute the notice and subrogation requirements to the unintended coverage provided by operation of law." In so finding, the Rohr court relied on this court's decision in Myers v. Safeco Insurance of America (February 18, 2000), Licking App. No. 99CA00083, reversed on the authority of Davidson v.Motorists Mutual Insurance Co., 91 Ohio St.3d 262, 2001-Ohio-36, on other grounds, wherein this court held the following:
 {¶ 26} "The court in Demetry v. Kim (1991), 72 Ohio App.3d 692, rejected the concept that exclusionary provisions contained in a business liability policy applied to underinsured motorist coverage that, as in the case sub judice, was implied as a matter of law. As noted by the court in Demetry,
`[t]he parties never intended underinsured coverage to be provided by the [business liability] policy. As such, there could be no negotiated exclusions intended to be implied to the underinsured coverage.' Id. at 698. The court further noted that `there is nothing, absent clear language evidencing an intent to do so, to prevent uninsured/underinsured coverage from being broader than liability coverage.' Id. Likewise, in the case sub judice, there was no language evidencing an intent to have the exclusionary provisions contained in the Safeco homeowner's policy issued to appellants apply to underinsured motorist coverage. The parties in the case sub judice never intended underinsured coverage to be provided under the Safeco policy in the first place. `As such, there could be no negotiated exclusions intended to be implied to the underinsured coverage.' Id. at 698." Myers at 10-11.
 {¶ 27} Assignment of Error II is denied.
 III {¶ 28} Appellant claims the trial court erred by ordering the matter to arbitration through the Westfield underlying policy. We agree.
 {¶ 29} As stated supra, when coverage arises by operation of law, the policy provisions will not be imposed upon such coverage.Scott-Pontzer at 666.
 {¶ 30} Assignment of Error III is granted.
 IV {¶ 31} Appellant claims appellee is judicially estopped from bringing an uninsured/underinsured motorist claim because of the medical malpractice claim and subsequently settlement on behalf of the child. We disagree.
 {¶ 32} The medical malpractice settlement was approved by the Court of Common Pleas of Stark County, Probate Court Division, pursuant to R.C. 2111.18. Appellant argues because the theory of the medical malpractice case centered on the fact that the medical providers were solely and exclusively responsible for the injuries to the child, appellee should be barred from pursuing an alternative cause.[3] We disagree for the following reasons.
 {¶ 33} Ohio tort law has always recognized there may be more than one proximate cause that results in injury to another. Contribution between joint tortfeasors has been recognized by statute. See, R.C. 2307.31
and R.C. 2307.32. In order to recover against joint tortfeasors, the joint tortfeasors do not need to be found responsible in a joint trial. It is accepted practice that one tortfeasor may settle and the matter may proceed to trial on the merits of the other tortfeasor's culpability. Intervening and remote causes have also been long recognized in Ohio law. Further, as the stated record establishes, no trial was held on the issues raised in the medical malpractice case.
 {¶ 34} Assignment of Error IV is denied.
 {¶ 35} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed in part and reversed in part.
By Farmer, J., Hoffman, P.J. and Edwards, J. concur.
topic: coverage under umbrella policy by operation of law — arbitration provision doesn't apply.
[1] Mr. and Mrs. Greene settled with the tortfeasor's insurance company for their own personal injuries, and settled medical malpractice claims with various medical providers involving Nathaniel.
[2] The rejection on the "Application For Excess Uninsured* Motorist Coverage" form fails to meet the requirements of Linko v. IndemnityInsurance Company of North America, 90 Ohio St.3d 445, 2000-Ohio-92, and is pre-H.B. No. 261. See, Application dated August 19, 1991, attached to Plaintiff's January 28, 2002 Motion for Summary Judgment as Exhibit G.
[3] The medical malpractice theories are advanced "under seal" and will not be discussed nor disclosed in this opinion.