OPINION
{¶ 1} Defendant-appellant, American Manufacturers Mutual Insurance Company (AMMIC), appeals a decision of the Mahoning County Common Pleas Court granting summary judgment in favor of plaintiff-appellee, Mark Headley (Headley). The trial court held that a business automobile policy (BAP) and a commercial catastrophe policy (CCP) issued by AMMIC provided $16 million in underinsured motorist (UIM) coverage to Headley by operation of law.
 {¶ 2} On May 6, 1998, Headley sustained personal injuries in a motor vehicle accident caused by the negligence of Cynthia Brown (Brown). At the time of the accident, Headley was driving his own vehicle for a personal, nonbusiness related purpose. The tortfeasor, Brown, had an automobile liability policy with Heritage Mutual Insurance Company (Heritage) with limits of $12,500 per person and $25,000 per occurrence. Heritage paid Headley the limit of $12,500 in full settlement. Headley also had his own automobile liability policy with Grange with limits of $12,500 per person and $25,000 per occurrence. Grange too paid Headley the $12,500 limit in settlement. To date, Headley has recovered $25,000.
 {¶ 3} Having exhausted the limits of the tortfeasor's liability coverage and his own coverage with Grange, Headley made a claim in this declaratory judgment action against AMMIC. AMMIC insures Andover Industries (Andover), Headley's employer. Although Headley had not been working or carrying out duties for Andover, Headley sought UIM coverage under a $1 million BAP and $15 million CCP of insurance Andover had purchased from AMMIC. Headley premised his claim against AMMIC upon the Ohio Supreme Court's decision in Scott-Pontzer v. Liberty Mut. Ins. Co.
(1999), 85 Ohio St.3d 660, 1999-Ohio-292.
 {¶ 4} AMMIC moved for summary judgment with regard to all of Headley's claims for recovery and Headley filed a motion for partial summary judgment. AMMIC argued that any alleged UIM coverage under the BAP policy would be excluded pursuant to the "other owned vehicle" exclusion of the policy and R.C. 3937.18. AMMIC also argued that the CCP policy did not provide UIM coverage and that Headley was not "insured" under that policy because he was not engaged in the conduct of Andover's business at the time of the accident. The trial court disagreed, and relying on Scott-Pontzer, found that Headley was entitled to UIM coverage under both policies totaling $16 million. This appeal followed.
 {¶ 5} AMMIC's first assignment of error states:
 {¶ 6} "THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT AMMIC'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 7} AMMIC's second assignment of error states:
 {¶ 8} "THE TRIAL COURT ERRED IN HOLDING THAT THE PLAINTIFF, MARK HEADLEY, IS ENTITLED TO UNDERINSURED MOTORIST COVERAGE UNDER THE AMMIC BUSINESS AUTO POLICY ISSUED TO MARK HEADLEY'S EMPLOYER ANDOVER INDUSTRIES."
 STANDARD OF REVIEW {¶ 9} A declaratory judgment action allows a court of record to declare the rights, status, and other legal relations of the parties. See Civ.R. 57 and R.C. 2721.01 et seq. Such an action is an appropriate mechanism for establishing the obligations of an insurer in a controversy between it and its insured as to the fact or extent of liability under a policy. See Lessak v. Metropolitan Cas. Ins. Co. of N.Y. (1958),168 Ohio St. 153, 155. When a declaratory judgment action is disposed of by summary judgment our review of the trial court's resolution of legal issues is de novo. King v. Western Reserve Group (1997), 125 Ohio App.3d 1,5. Hence, summary judgment is proper when: "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Welco Industries, Inc. v. Applied Cos. (1993),67 Ohio St.3d 344, 346.
 R.C. 3937.18 {¶ 10} R.C. 3938.18 governs the provision of uninsured and underinsured motorist (UM/UIM) coverage. The statute has undergone numerous revisions in recent years. Prior to the most recent revision, R.C. 3937.18 required an insurer to offer UM/UIM coverage whenever an automobile liability or motor vehicle liability policy of insurance of insurance was issued. If UM/UIM coverage was not offered, it became part of the policy by operation of law. Davidson v. Motorists Mut. Ins. Co.
(2001), 91 Ohio St.3d 262, 264, 2001-Ohio-36. Since there have been numerous changes in recent years to the statutes governing UM/UIM coverage and the case law interpreting those statutes, the applicable policy period and the applicable version of R.C. 3937.18 must first be determined.
 {¶ 11} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Groupof Cos. (1998), 82 Ohio St.3d 281, 1998-Ohio-381, syllabus. Here, both policies were first issued on November 1, 1997, and covered the period from November 1, 1997 to November 1, 1998, including the date of the accident, May 6, 1998. Therefore, the version of R.C. 3937.18 that controls this case was that enacted by Am.Sub.H.B. No. 261, which became effective September 3, 1997.
 Scott-Pontzer {¶ 12} In Scott-Pontzer v. Liberty Mut. Ins. Co. (1999),85 Ohio St.3d 660, 1999-Ohio-292, Christopher T. Pontzer (Pontzer) was killed in a vehicle accident. At the time of the accident, Pontzer was driving an automobile owned by his wife and was not acting within the scope of his employment. Pontzer was an employee of Superior Dairy, Inc. (Superior). Superior was insured under a commercial automobile liability policy issued by Liberty Mutual Fire Insurance Company (Liberty Fire), which contained a provision for UIM coverage. Superior was also insured under an umbrella excess insurance policy issued by Liberty Mutual Insurance Company (Liberty Mutual). Pontzer's wife, as surviving spouse and executor of her husband's estate, brought an action against Liberty Fire and Liberty Mutual seeking coverage under both policies.
 {¶ 13} The Ohio Supreme Court began its inquiry with whether Pontzer was insured under the policies. The declarations page of the Liberty Fire policy named Superior Dairy Inc. as the named insured. The business auto coverage form of the policy stated that "[t]hroughout this policy the words you and your refer to the [n]amed [i]nsured shown in the [d]eclarations." The policy defined an "insured" for purposes of underinsured motorist coverage as follows:
 {¶ 14} "B. Who Is An Insured
 {¶ 15} "1. You.
 {¶ 16} "2. If you are an individual, any family member.
 {¶ 17} "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 18} "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured."
 {¶ 19} Liberty Fire argued that the policy language unambiguously demonstrated the parties' intent that Superior was the only named insured and that the policy did not provide individual coverage for any of Superior's employees. Applying the well-settled rule that "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured," King v. Nationwide Ins.Co. (1988), 35 Ohio St.3d 208, syllabus, the court disagreed, concluding that the Liberty Fire policy language was ambiguous. The court stated that the language of the Liberty Fire policy could be interpreted to include company employees. The court reasoned that "it would be reasonable to conclude that `you,' while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons — including to the corporation's employees." Scott-Pontzer, 85 Ohio St.3d at 664.
 {¶ 20} The court also held that Pontzer was an insured for purposes of UIM coverage under Liberty Mutual's umbrella policy even though that policy did not include UIM policy. The court found that Liberty Mutual had failed to offer such coverage as required by R.C.3937.18 and Liberty Mutual's failure to do so resulted in the existence of UIM coverage by operation of law.
 BAP {¶ 21} The declarations page of the BAP names Andover Industries, Inc. and Buffalo Molded Plastics, Inc. as the named insureds. The business auto coverage form of the BAP states, "Throughout this policy the words `you' and `your' refer to the Named Insured shown in the Declarations." (Form CA 00 01 [Ed. 12 93], p. 1 of 13.) The policy also contains an Ohio uninsured motorist coverage form that defines an "insured" for purposes of underinsured motorist coverage as follows:
 {¶ 22} "B. WHO IS AN INSURED
 {¶ 23} "1. You.
 {¶ 24} "2. If you are an individual, any `family member.'
 {¶ 25} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 26} "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'" (Form CA 21 33 [Ed. 06 95], p. 1 of 4.)
 {¶ 27} The language in the BAP policy here is identical to that inScott-Pontzer. Therefore, Headley is an insured under the policy.
 Other Owned Auto Exclusion {¶ 28} AMMIC argues that even assuming arguendo that Headley is an insured under the BAP, any alleged UIM coverage thereunder is excluded. AMMIC points to the following exclusion contained within the BAP:
 {¶ 29} "C. EXCLUSIONS
 {¶ 30} "This insurance does not apply to:
 {¶ 31} "* * *
 {¶ 32} "4. `Bodily injury' sustained by:
 {¶ 33} "a. You while `occupying' or when struck by any vehicle owned by you that is not a covered `auto' for Uninsured Motorists Coverage under this Coverage Form[.]" (Form CA 21 33 [Ed. 06 95], pp. 1 and 2 of 4.)
 {¶ 34} When Am.Sub.H.B. No. 261 amended R.C. 3937.18, it added a subsection allowing for an exclusion like the one found in the BAP here.[1] However, that does not necessarily mean that the exclusion applies to Headley in this case. The business auto coverage form defines a covered auto as follows:
 {¶ 35} "SECTION 1 — COVERED AUTOS
 {¶ 36} "ITEM TWO of the Declarations shows the `autos' that are covered `autos' for each of your coverages. The following numerical symbols describe the `autos' that may be covered `autos.' The symbols entered next to a coverage on the Declarations designate the only `autos' that are covered `autos."
 {¶ 37} "A. DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS
 {¶ 38} "SYMBOL DESCRIPTION
 {¶ 39} "* * *
 {¶ 40} "2 = OWNED `AUTOS' ONLY. Only those `autos' you own (and for Liability Coverage any `trailers' you don't own while attached to power units you own). This includes those `autos' you acquire ownership of after the policy begins." (Form CA 00 01 [Ed. 12 93], p. 1 of 13.)
 {¶ 41} At item two on the declarations page, both uninsured and underinsured motorists coverage have numerical symbol 2 next to them indicating which autos are covered autos. (Form CA 72 00 [Ed. 12 93], p. 1 of 4.) As indicated earlier, the BAP states, "Throughout this policy the words `you' and `your' refer to the Named Insured shown in the Declarations." (Form CA 00 01 [Ed. 12 93], p. 1 of 13.)
 {¶ 42} Since a covered auto includes one owned by "you," then the car Headley was driving is a covered auto making the exclusion inapplicable. AMMIC argues that this extends the holding ofScott-Pontzer too far. To the contrary, this is a logical application of the Scott-Pontzer to another provision of the same policy. Scott-Pontzer
held that "you" was ambiguous in the definition of an "insured" in the UIM portion of the policy. If "you" is ambiguous in some parts of the policy, it should be considered ambiguous in all parts of the policy. The policy gives "you" the same meaning throughout the policy. Thus, "you" includes employees of Andover (including Headley) wherever it appears in the policy.
 {¶ 43} Accordingly, AMMIC's first and second assignments of error are without merit.
 {¶ 44} AMMIC's third assignment of error states:
 {¶ 45} "THE TRIAL COURT ERRED IN HOLDING THAT THE PLAINTIFF, MARK HEADLEY, IS ENTITLED TO UNDERINSURED MOTORIST COVERAGE UNDER THE COMMERCIAL CATASTROPHE POLICY ISSUED BY AMMIC TO MARK HEADLEY'S EMPLOYER, ANDOVER INDUSTRIES."
 {¶ 46} AMMIC next argues that the CCP does not provide UIM coverage by operation of law because it offered UIM coverage with the BAP which was part of a package sold to Andover. AMMIC's argument is without merit. It is undisputed that AMMIC failed to offer UM/UIM coverage under the CCP. Thus, unlike the BAP, the CCP did not contain an UM/UIM coverage form that defined insureds for purposes of that coverage.
 {¶ 47} The Ohio Supreme Court's decision in Scott-Pontzer is directly on point on this issue. The court stated:
 {¶ 48} "In Duriak v. Globe Am. Cas. Co. (1986), 28 Ohio St.3d 70,72, 28 OBR 168, 170, 502 N.E.2d 620, 622-623, we held that excess liability insurance must comport with R.C. 3937.18 and thus uninsured (and underinsured) motorist coverage must be tendered. Further, in Gyoriv. Johnston Coca-Cola Bottling Group (1996), 76 Ohio St.3d 565, 568,669 N.E.2d 824, 827, we stated that failure by the insurer to offer such coverage results in the provision of such coverage by operation of law. Absent any showing that underinsured coverage was offered and rejected, such coverage is included in the policy."
 {¶ 49} Therefore, Headley, as an employee of Andover, was also insured under Andover's CCP policy and that said policy includes UIM coverage, as such coverage is mandated by operation of law.
 {¶ 50} Next, AMMIC argues that even if UIM coverage is imputed under the CCP as a matter of law, Headley would not be entitled to either Coverage A or Coverage B of the policy, as he is not an insured thereunder. Excess liability coverage is afforded under Coverage A of the CCP of the underlying policy (i.e., the BAP) provides coverage. AMMIC argues that the BAP did not provide UIM coverage because of the "other owned vehicle" exclusion. As we have already concluded, the exclusion did not apply to Headley, therefore he is entitled to Coverage A.
 {¶ 51} AMMIC argues that Headley is not entitled to Coverage B because he was not acting within the scope of his employment. AMMIC points to the definition of an insured as it relates to Coverage B as follows:
 {¶ 52} "a. Your `employees', other than your `executive officers', but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." (Form C.C. 70 00 [Ed. 08 94], p. 10 of 17.)
 {¶ 53} Again, the Ohio Supreme Court's decision in Scott-Pontzer
renders this argument meritless. In examining a similar restriction found in the Liberty Mutual excess insurance policy, the court observed:
 {¶ 54} "Liberty Mutual's umbrella/excess insurance policy did restrict coverage to employees acting within the scope of their employment. However, we have already found that Liberty Mutual had failed to offer underinsured motorist coverage through the umbrella policy issued to Superior Dairy. Thus, any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage. See, e.g., Demetry v. Kim (1991), 72 Ohio App.3d 692,698, 595 N.E.2d 997, 1001. Therefore, there is no requirement in the umbrella policy that Pontzer had to be acting during the scope of his employment to qualify for underinsured motorist coverage. Therefore, AMMIC is entitled to underinsured motorist benefits under the Liberty Mutual umbrella policy as well." (Emphasis sic.) Scott-Pontzer,85 Ohio St.3d at 666.
 {¶ 55} The provisions which AMMIC rely upon, by their express terms, apply only to liability coverage and not to UIM coverage. LikeScott-Pontzer, there are no provisions in AMMIC's policy that limit UIM coverage to employees who are within the scope and course of their employment. Therefore, the analysis set forth in Scott-Pontzer applies to the policy at issue here.
 {¶ 56} Accordingly, AMMIC's third assignment of error is without merit.
 {¶ 57} AMMIC's fourth assignment of error states:
 {¶ 58} "THE TRIAL COURT ERRED BY FAILING TO FIND THE DECISIONS OF THE OHIO SUPREME COURT IN SCOTT-PONTZER, SELANDER, EZAWA, WOLFE ANDLINKO VIOLATE THE CONTRACT CLAUSE IN BOTH THE U.S. AND OHIO STATE CONSTITUTIONS."
 {¶ 59} AMMIC argues that the Supreme Court of Ohio's decisions inSelander v. Erie Ins. Group (1999), 85 Ohio St.3d 541, Scott-Pontzer v.Liberty Mutual Fire Ins. Co. (1999), 85 Ohio St.3d 660, 1999-Ohio-292,Ezawa v. Yasuda Fire Marine Ins. Co. of Am. (1999),86 Ohio St.3d 557, 1999-Ohio-124, Wolfe v. Wolfe (2000), 88 Ohio St.3d 246,2000-Ohio-322, and Linko v. Indemn. Ins. Co. of N. Am. (2000),90 Ohio St.3d 445, 2000-Ohio-92, infringe upon the right of freedom of contract protected under the United States Constitution Article I, Section 10 and the Ohio Constitution, Article II, Section 28. This court does not have the authority to reverse a decision of the Ohio Supreme Court. Bundschu v. Naffah, 147 Ohio App.3d 105, 115, 2002-Ohio-607, at ¶ 53.
 {¶ 60} Accordingly, AMMIC's fourth assignment of error is without merit.
 {¶ 61} AMMIC's fifth assignment of error states:
 {¶ 62} "THE TRIAL COURT ERRED IN APPLYING THE SCOTT-PONTZER LINE OF CASES TO THE MED PAY COVERAGE UNDER THE AMMIC POLICY ISSUED TO MARK HEADLEY'S EMPLOYER, ANDOVER INDUSTRIES."
 {¶ 63} AMMIC argues that Headley is not entitled to medical payments coverage under the BAP. AMMIC argues that Headley was not an insured under the provision and that even if he was an insured exclusions applied to prevent coverage.
 {¶ 64} The BAP contains Auto Medical Payments Coverage. The endorsement provides:
 {¶ 65} "A. COVERAGE
 {¶ 66} "We will pay reasonable expenses incurred for necessary medical and funeral services to or for an `insured' who sustains `bodily injury' caused by `accident.' We will pay only those expenses incurred, for services rendered within three years from the date of the `accident.'
 {¶ 67} "B. WHO IS AN INSURED
 {¶ 68} "1. You while `occupying' or, while a pedestrian, when struck by any `auto.'
 {¶ 69} "2. If you are an individual, any `family member' while `occupying' or, while a pedestrian, when struck by any `auto.'
 {¶ 70} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 71} "C. EXCLUSIONS
 {¶ 72} "This insurance does not apply to any of the following:
 {¶ 73} "* * *
 {¶ 74} "2. `Bodily injury' sustained by you or any `family member' while `occupying' or struck by any vehicle (other than a covered `auto') owned by you or furnished or available for your regular use." (Form CA 99 02 [Ed. 07 97], p. 1 of 2.)
 {¶ 75} Scott-Pontzer held that "you" was ambiguous in the definition of an "insured" in the uninsured motorist portion of the policy. As we indicated before, if "you" is ambiguous in some parts of the policy, it should be considered ambiguous in all parts of the policy. The policy gives "you" the same meaning throughout the policy. Thus, "you" includes employees of Andover (including Headley) wherever it appears in the policy. Therefore, Headley is entitled to coverage under the auto medical payments endorsement.
 {¶ 76} AMMIC also argues that even if Headley were entitled to coverage under the BAP and/or the CCP, it would be entitled to setoff all available coverage from all liable sources. In other words, AMMIC wants to set-off the $12,500 paid by Headley's UIM carrier in addition to the $12,500 of liability insurance paid by the tortfeasor's carrier. AMMIC cites R.C. 3937.18(A)(2) and Clark v. Scarpelli (2001), 91 Ohio St.3d 271,2001-Ohio-39, in support.
 {¶ 77} Headley concedes that AMMIC is entitled to set-off the $12,500 of liability insurance by the tortfeasor's carrier. However, Headley argues that AMMIC is limited to setting off those payments made by liability insurance, not UIM insurance.
 {¶ 78} Former R.C. 3937.18(A)(2) provided in pertinent part that:
 {¶ 79} "The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added.) 1997 Am.Sub.H.B. No. 261, 147 Ohio Laws, Part II, 2372.
 {¶ 80} Clark is inapplicable to this case. Clark involved one liability policy and one UIM policy each with limits of $100,000, and multiple claimants. In this case, AMMIC's BAP and CCP policies provide secondary UIM coverage and did not provide coverage for the tortfeasor. Therefore, AMMIC is not entitled to a set-off of UIM coverage paid by Headley's carrier.
 {¶ 81} Accordingly, AMMIC's fifth assignment of error is without merit.
 {¶ 82} The judgment of the trial court is hereby affirmed.
Vukovich, J., and Waite, J., concur.
[1] {¶ a} Am.Sub.H.B. No. 261 added subsection (J) to R.C.3937.18 which provided:
{¶ b} "(J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:
{¶ c} "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided;
{¶ d} "(2) While the insured is operating or occupying a motor vehicle without a reasonable belief that the insured is entitled to do so, provided that under no circumstances will an insured whose license has been suspended, revoked, or never issued, be held to have a reasonable belief that the insured is entitled to operate a motor vehicle;
{¶ e} "(3) When the bodily injury or death is caused by a motor vehicle operated by any person who is specifically excluded from coverage for bodily injury liability in the policy under which the uninsured and underinsured motorist coverages are provided."