OPINION
{¶ 1} On December 31, 1993, Ruth E. Griffith was operating her personal vehicle and her husband, Robert L. Griffith, was a passenger in the front seat. The Griffith vehicle was involved in an accident caused by the negligence of Veronica Goley who was operating her personal vehicle. The Griffiths were killed.
 {¶ 2} At the time of the accident, their resident son, appellee, Billy R. Griffith, was employed by Fisher Foods, insured under a comprehensive business policy which included commercial automobile coverage, commercial general liability coverage and commercial catastrophic liability coverage issued by appellants, Buckeye Union Insurance Company and CNA Insurance Company.
 {¶ 3} On January 25, 2001, appellee, individually and in his capacity as administrator of the estates of Robert L. Griffith and Ruth E. Griffith, deceased, filed a complaint against appellants for uninsured motorist benefits.[1]
 {¶ 4} All parties filed motions for summary judgment. By judgment entry filed November 30, 2001, the trial court found appellee, individually and as administrator, was entitled to coverage under the commercial automobile coverage part and the commercial catastrophic liability coverage part, but not the commercial general liability coverage part. The trial court filed a nunc pro tunc judgment entry on December 20, 2001 to correct an error.
 {¶ 5} Appellants filed an appeal. Upon remand by this court in light of Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186,2002-Ohio-7217, the trial court found appellee gave timely notice, but breached the subrogation provision of the commercial automobile policy however, appellee "rebutted any presumption of prejudice due to said breach of the subrogation provision." See, Judgment Entry filed May 19, 2003.
 {¶ 6} This matter is now before this court for consideration. Appellants assigned the following errors:
 I {¶ 7} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF-APPELLEES AS TO THE COVERAGE UNDER BUCKEYE UNION INSURANCE COMPANY'S COMMERCIAL AUTO COVERAGE PART AND AS TO BUCKEYE UNION INSURANCE COMPANY'S COMMERCIAL CATASTROPHIC LIABILITY COVERAGE PART."
 II {¶ 8} "THE TRIAL COURT ERRED IN DECLINING TO GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS-APPELLEES AS TO THE COVERAGE UNDER THE BUCKEYE UNION INSURANCE COMPANY COMMERCIAL AUTO COVERAGE PART AND AS TO THE BUCKEYE UNION INSURANCE COMPANY COMMERCIAL CATASTROPHIC LIABILITY COVERAGE PART."
 {¶ 9} Appellee filed a cross-appeal in his individual capacity and assigned the following errors:
 CROSS-ASSIGNMENT OF ERROR I {¶ 10} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS/CROSS-APPELLEES AS TO UNINSURED MOTORIST COVERAGE UNDER BUCKEYE UNION'S COMMERCIAL GENERAL LIABILITY COVERAGE AS IT RELATES TO CROSS-APPELLANT BILLY R. GRIFFITH, IN HIS INDIVIDUAL CAPACITY."
 CROSS-ASSIGNMENT OF ERROR II {¶ 11} "THE TRIAL COURT ERRED IN DECLINING TO GRANT SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF/CROSS-APPELLANT BILLY R. GRIFFITH IN HIS INDIVIDUAL CAPACITY, AS IT RELATES TO UNINSURED MOTORIST COVERAGE UNDER BUCKEYE UNION'S COMMERCIAL GENERAL LIABILITY COVERAGE."
 {¶ 12} Because the parties stipulated to the facts in the trial court on August 31, 2001, both the appeal and cross-appeal argue the trial court's judgment was inappropriate on the undisputed facts. All the assignments of error and cross-assignments of error challenge the trial court's granting of summary judgment to either appellants or appellee. For this reason, we will address all the assignments together.
 I, II, CROSS-ASSIGNMENT OF ERROR I, CROSS-ASSIGNMENT OF ERROR II {¶ 13} Appellants argue the trial court erred in finding coverage to appellee under the commercial automobile coverage part and the commercial catastrophic liability coverage part. Appellee argues the trial court erred in finding no coverage under the commercial general liability coverage part.
 {¶ 14} Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins, 75 Ohio St.3d 447, 448,1996-Ohio-211:
 {¶ 15} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 16} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddyv. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35.
 COMMERCIAL AUTOMOBILE COVERAGE PART {¶ 17} The commercial automobile coverage part under the comprehensive business policy issued to Fisher Foods contained express uninsured/underinsured motorist coverage. The trial court found said coverage provisions were ambiguous in defining an "insured" and therefore coverage existed by operation of law pursuant to Scott-Pontzer v. LibertyMutual Fire Insurance Co., 85 Ohio St.3d 660, 1999-Ohio-292.
 {¶ 18} The uninsured/underinsured motorist provisions define an "insured" as follows:
 {¶ 19} 1. You.
 {¶ 20} 2. If you are an individual, any "family member."
 {¶ 21} 3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto."
 {¶ 22} 4. Anyone else for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured." See, Section B of the Ohio Uninsured Motorists Coverage, CA 21 33 04 91, attached to Stipulations filed August 31, 2001 as Exhibit 10.
 {¶ 23} The policy states "the words `you' and `your' refer to the Named Insured shown in the Declarations." See, Business Auto Coverage Form, CA 00 01 12 90, attached to Stipulations filed August 31, 2001 as Exhibit 10. The named insured listed in the declarations page is "Fishers Food of Canton." See, Named Insured, attached to Stipulations filed August 31, 2001 as Exhibit 10. This definition of an "insured" is similar to the definition in Scott-Pontzer. However, the policy contains an endorsement titled "Drive Other Car Coverage — Broadened Coverage for Named Individuals" adding individuals as named insureds, namely "Herbert Fisher, Jack Fisher Jeffrey Fisher." See, Endorsement No. CA 99 10 12 90, attached to Stipulations filed August 31, 2001 as Exhibit 10.
 {¶ 24} Section C of the endorsement adds the following to "Who Is An Insured" under uninsured/underinsured motorists coverage:
 {¶ 25} Any individual named in the Schedule and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:
 {¶ 26} Any "auto" owned by that individual or by any "family member."
 {¶ 27} According to this definition, underinsured motorists coverage is broadened to include the Griffiths except for when occupying any vehicle they own. It is undisputed the "1995 Chevy Monte Carlo" involved in the accident "was owned by Ruth E. Griffith." Stipulations filed August 31, 2001, at ¶ 5.
 {¶ 28} Pursuant to Section C of the endorsement, we find appellee, individually and as administrator, is not entitled to coverage under the commercial automobile coverage part. See, Miller v. GrangeMutual Casualty Company, Stark App. No. 2002CA00058, 2002-Ohio-5763.
 COMMERCIAL GENERAL LIABILITY COVERAGE PART {¶ 29} In its judgment entry of November 30, 2001, the trial court found the commercial general liability coverage part was a motor vehicle policy, but found appellee, individually and as administrator, was not an "insured" under said coverage.
 {¶ 30} Appellee, individually, argues he is an insured under the commercial general liability coverage part. We find this issue to be irrelevant because said coverage part is not a motor vehicle policy subject to R.C. 3937.18. See, Szekeres v. State Farm Fire and Cas. Co.,
Licking App. No. 02CA00004, 2002-Ohio-5989, at ¶ 31-45; Dalton v.The Travelers Insurance Co. (December 23, 2002), Stark App. Nos. 2001CA00380, 2001CA00393, 2001CA00407 2001CA00409, at 9-11.
 {¶ 31} Given the fact the commercial general liability coverage part is not a motor vehicle policy, we find appellee, individually and as administrator, is not entitled to coverage under the commercial general liability coverage part.
 COMMERCIAL CATASTROPHIC LIABILITY COVERAGE PART {¶ 32} At the outset, we note uninsured/underinsured motorist coverage arises under the commercial catastrophic liability coverage part by operation of law as there was no valid rejection of such.
 {¶ 33} The definition of "Who Is An Insured" states as follows in pertinent part:
 {¶ 34} 4. Except with respect to the ownership, maintenance, operation, use, "loading or unloading", or entrustment to others of "autos" or aircraft, if you are designated in the Declarations as:
 {¶ 35} ***
 {¶ 36} "c. An organization other than a partnership or joint venture, your executive officers, your directors, your stockholders and your employees are insureds while acting within the scope of their duties as such." See, Section II(4) of the Commercial Catastrophic Liability Coverage Form, attached to Stipulations filed August 31, 2001 as Exhibit 10.
 {¶ 37} Based upon this definition, appellee, being an employee, is an insured "while acting within the scope of their duties as such." Does this restriction apply sub judice? We answer in the negative for the following reasons.
 {¶ 38} In Scott-Pontzer, the Supreme Court of Ohio reviewed an umbrella/excess policy which included "scope of employment" language. The court found uninsured/underinsured motorist coverage by operation of law and disregarded any restrictions therein:
 {¶ 39} "On the other hand, Liberty Mutual's umbrella/excess insurance policy did restrict coverage to employees acting within the scope of their employment. However, we have already found that Liberty Mutual had failed to offer underinsured motorist coverage through the umbrella policy issued to Superior Dairy. Thus, any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage. See, e.g., Demetry v. Kim
(1991), 72 Ohio App.3d 692, 698, 595 N.E.2d 997, 1001. Therefore, there is no requirement in the umbrella policy that Pontzer had to be acting during the scope of his employment to qualify for underinsured motorist coverage. Therefore, appellant is entitled to underinsured motorist benefits under the Liberty Mutual umbrella policy as well."Scott-Pontzer at 666.
 {¶ 40} The policy sub judice contains a very similar restriction. Clearly, the Scott-Pontzer court held such a restriction would not be read into an operation of law uninsured/underinsured motorist coverage scenario and found the restriction to be inapplicable.
 {¶ 41} Using the Supreme Court of Ohio's reasoning inScott-Pontzer, we find appellee, individually, is entitled to coverage under the commercial catastrophic liability coverage part issued by appellants, but only in excess of the commercial automobile coverage part limits of $1,000,000, based upon the following pertinent language in the coverage part:
 {¶ 42} 1. Insuring Agreement.
 {¶ 43} a. We will pay "net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies. But, the amount of "net loss" we will pay for damages is limited as described in RETAINED LIMIT AND LIMITS OF INSURANCE (SECTION III).*** See, Section I, Coverage A(1)(a) of the Commercial Catastrophic Liability Coverage Form, attached to Stipulations filed August 31, 2001 as Exhibit 10.
 {¶ 44} "Retained limit" is defined in the policy as follows:
 {¶ 45} When an "underlying insurance" aggregate limit has been exhausted by the payment of "net loss", the insurance afforded by this Coverage Part will drop down and apply in excess of that exhausted aggregate limit. Any `net loss' payment we make in excess of an exhausted aggregate limit is included within, and is not in addition to, the Limits of Insurance for this Coverage Part.
 {¶ 46} In any instance other than the above, our liability for "injury" to which this insurance applies shall be only for the "net loss" in excess of the applicable "retained limit". See, Section III(a) of the Commercial Catastrophic Liability Coverage Form, attached to Stipulations filed August 31, 2001 as Exhibit 10.
 {¶ 47} We find coverage under the commercial catastrophic liability coverage part in excess of the commercial automobile coverage part limits to appellee in his individual capacity only. Appellee as administrator is not entitled to coverage under the commercial catastrophic liability coverage part as Robert and Ruth Griffith were not "employees" and do not meet any of the other definitions under "Who Is An Insured."
 {¶ 48} Assignments of Error I and II are granted in part. Cross-Assignments of Error I and II are denied.
 {¶ 49}
The judgment of the Court of Common Pleas of Stark County, Ohio, is hereby affirmed in part and reversed in part.
By Farmer, J. and Gwin, P.J. concur.
[1] Ms. Goley was uninsured. Appellee settled with his insurance company and his parents' insurance company.