**HIXSON, Appellant,**

v.

**CALLENTINE et al.;  Westport Insurance Company, Appellee.**

[Cite as *Hixson v. Callentine*, 159 Ohio App.3d 146, 2004-Ohio-5943.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 04CA4.

Decided Nov. 4, 2004.

Steven G. Thomakos, for appellant.

David L. Eidelberg, for appellee.[1]

KLINE, Presiding Judge.

{¶ 1} Joe G. Hixson appeals from the judgment of the Athens County Court of Common Pleas granting Westport Insurance Company summary judgment. Hixson argues that he is an insured under the Westport policy issued to Iddings Trucking, Inc., and that uninsured-motorist and underinsured-motorist ("UM/UIM") coverage equal to the liability policy limits arose by operation of law because Westport's offer of UM/UIM coverage did not comply with the requirements set forth by the Ohio Supreme Court in *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338. We find that the Ohio Supreme Court's holdings in *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, and *In re Uninsured & Underinsured Motorist Coverage Cases,* 100 Ohio St.3d 302, 2003-Ohio-5888, 798 N.E.2d 1077, operate to preclude Hixson from recovering UM/UIM proceeds under the policy even if we assume that the coverage arose by operation of law. Accordingly, we affirm the judgment of the trial court.

I

{¶ 2} On July 22, 2001, Leslie Callentine pulled out of a private driveway and struck a motorcycle owned and operated by Hixson. As a result of the collision,

---

1. Steven T. Sloan, counsel for defendant Leslie R. Callentine, filed a notice informing this court that his client had no involvement with the issues presented on appeal and did not intend to participate. Additionally, we granted the joint motion of Hixson and National General Assurance Company ("NGAC") to dismiss with prejudice NGAC from this appeal.

Hixson suffered bodily injury. The parties do not dispute that Hixson operated his own motorcycle on personal business at the time of the accident.

{¶ 3} Callentine had insurance liability limits of $12,500 through Nationwide Insurance Company and $12,500 through Grange Insurance Company. Hixson claims that Callentine's insurance coverage is insufficient to compensate him for his injuries.

{¶ 4} At the time of the accident, Hixson was a truck driver who worked for Iddings Trucking, Inc. Iddings was the named insured under a commercial auto policy issued by Westport Insurance Corporation. The Westport policy contained an endorsement for "HIRED AUTOS SPECIFIED AS COVERED AUTOS YOU OWN" that provided:

> B. CHANGES IN LIABILITY COVERAGE. The following is added to WHO IS AN INSURED: While any covered "auto" described in the Schedule is rented or leased to you and is being used by or for you, its owner or anyone else from whom you rent or lease it is an "insured" but only for that covered "auto."

{¶ 5} The parties do not dispute that Hixson leased his truck to Iddings or that the lease was still in effect at the time of the accident. On its face, the Westport policy's form declarations provide $1,000,000 in liability coverage, $25,000 uninsured-motorist coverage, and $25,000 underinsured-motorist coverage per accident.

{¶ 6} Hixson filed suit against Callentine, Westport, and National General Assurance Company ("NGAC"). He advanced a negligence claim against Callentine and requested a declaratory judgment that he was entitled to UM/UIM coverage under both Iddings's Westport policy and his personal NGAC policy. Further, Hixson argued that because Westport's offer of UM/UIM coverage to Iddings did not comport with the requirements set forth by the Ohio Supreme Court in *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338, UM/UIM coverage in the amount of $1,000,000 arose by operation of law.

{¶ 7} Hixson, Westport, and NGAC filed motions for summary judgment. The trial court granted summary judgment to NGAC and Westport by separate judgment entries and found that there was no just cause for delay. The trial court based its judgment in Westport's favor upon "the reasons advanced in [Westport's] December 9th, and 16th, 2003 briefs." In essence, the trial court found that based upon the Ohio Supreme Court's decisions in *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256 and *In re Uninsured and Underinsured Motorist Coverage Cases,* 100 Ohio St.3d 302, 2003-Ohio-5888, 798 N.E.2d 1077, Hixson was not acting within the scope of his

employment at the time of the accident and, therefore, was not entitled to recover underinsured-motorist benefits under the Westport policy.

{¶ 8} Hixson appeals, challenging the trial court's grant of summary judgment to both NGAC and Westport. We previously granted the joint motion of Hixson and NGAC to dismiss NGAC from this appeal with prejudice. Hixson asserts the following assignment of error: "The trial court erred as a matter of law in granting appellee's motion for summary judgment and denying appellant's motion on the issue of underinsured/uninsured motorist coverage under the Westport insurance policy."

## II

{¶ 9} Summary judgment is appropriate when the court finds that the following factors have been established: (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56. See *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411, 599 N.E.2d 786. "In reviewing the propriety of summary judgment, an appellate court independently reviews the record to determine if summary judgment is appropriate. Accordingly, we afford no deference to the trial court's decision in answering that legal question." Id. at 411–412, 599 N.E.2d 786. See, also, *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10.

{¶ 10} The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264, citing *Mitseff v. Wheeler* (1988) 38 Ohio St.3d 112, 115, 526 N.E.2d 798. The moving party bears this burden even for issues for which the nonmoving party may bear the burden of proof at trial. Id. "However, once the movant has supported his motion with appropriate evidentiary materials, the nonmoving party may not rely upon the allegations and/or denials in his pleadings. * * * He must present evidentiary materials showing that a material issue of fact does exist." *Morehead*, 75 Ohio App.3d at 413, 599 N.E.2d 786.

{¶ 11} We interpret insurance contracts using the identical standards of interpretation we apply to other written contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096. Our role is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898,

citing *Employers' Liab. Assur. Corp. v. Roehm* (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. We must give the language of an insurance policy its plain and ordinary meaning. *Jirousek v. Prudential Ins. Co.* (1971), 27 Ohio St.2d 62, 64, 56 O.O.2d 34, 271 N.E.2d 866. "Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties." *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, at ¶ 8, quoting *Rhoades v. Equitable Life Assur. Soc. of the United States* (1978), 54 Ohio St.2d 45, 47, 8 O.O.3d 39, 374 N.E.2d 643.

{¶ 12} At the time Westport issued the insurance policy to Iddings, the September 3, 1997 enactment codifying Am.Sub. H.B. No. 261 was the applicable version of R.C. 3937.18. That version of R.C. 3937.18(A) provides: "No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds: (1) [u]ninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * * (2) [u]nderinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *."[2]

{¶ 13} Additionally, the applicable version of R.C. 3937.18(C) provides: "A named insured or applicant may reject or accept both coverages as offered under division (A) of this section, or may alternatively select both such coverages in accordance with a schedule of limits approved by the superintendent. * * * A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants."

{¶ 14} The Ohio Supreme Court has held, " 'There can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the insurance provider.' " *Linko,* 90 Ohio St.3d at 448–449, 739 N.E.2d 338,

---

**2.** Effective October 31, 2001, Am.Sub.S.B. No. 97 amended R.C. 3937.18, yet again, to eliminate the mandatory requirement that insurers offer UM/UIM coverage.

quoting *Gyori v. Johnston Coca–Cola, Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 669 N.E.2d 824, paragraph one of the syllabus. There, the court found that it could not know whether an insured has made an express, knowing rejection of UIM coverage without a written offer and written rejection. Accordingly, the court held that to satisfy the offer requirement of R.C. 3937.18, the insurer must (1) inform the insured of the availability of UM/UIM coverage, (2) set forth the premium for UM/UIM coverage, (3) include a brief description of the coverage, and (4) expressly state the UM/UIM coverage limits in its offer. Id. at 447–448, 739 N.E.2d 338. Although *Linko* interpreted a prior version of R.C. 3937.18, the Ohio Supreme Court affirmed that *Linko* was still viable after the enactment of H.B. 261. *Kemper v. Michigan Millers Mut. Ins. Co.*, 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196. Additionally, an offer of UM/UIM coverage that fails to comply with the requirements of *Linko* invalidates both an attempted *rejection* and an attempted *reduction* of UM/UIM coverage. See *Edstrom v. Univ. Underwriters Ins. Co.*, Franklin App. No. 01AP–1009, 2002-Ohio-3334, 2002 WL 1379205, at ¶ 23; *Roberts v. State Farm Mut. Auto. Ins. Co.*, 155 Ohio App.3d 535, 551, 2003-Ohio-5398, 802 N.E.2d 157, at ¶ 84–87.

{¶ 15} Hixson argues that, pursuant to the Westport endorsement for leased vehicles, he was an insured under the Westport policy. He further argues that Westport failed to properly offer Iddings UM/UIM coverage as required by R.C. 3937.18 and *Linko*. Specifically, Hixson argues that Westport's offer of UM/UIM coverage failed to (1) make an express offer of UM/UIM coverage, (2) state the premium for such coverage, (3) expressly state the coverage limits, and (4) state the date that Westport executed it.

{¶ 16} In support of his argument, Hixson notes that the trial court deemed his first request for admissions admitted. Accordingly, Westport admitted, inter alia, that (1) pursuant to the policy endorsement, Hixson was an insured under the Westport policy by virtue of his leasing his "auto" to Iddings Trucking, (2) Westport's offer of UM/UIM coverage did not state a premium for that coverage, (3) Westport's offer of UM/UIM coverage did not provide an express statement of the coverage limits as to each accident, and (4) Westport's "offer" never made an express offer of UM/UIM coverage, but instead stated Ohio Law.[3] Based upon these admissions, and the Supreme Court's holdings in *Linko* and *Kemper*, Hixson concludes that he is an insured under the policy and that UM/UIM coverage equal to the liability policy limit of $1,000,000 arose by operation of law.

{¶ 17} Next, Hixson argues that he is entitled to collect underinsured-motorist benefits from Westport. Hixson claims that the restrictive language in West-

---

**3.** Westport has not appealed the trial court's interlocutory order deeming Hixson's first request for admissions admitted.

port's liability policy, including him as "an 'insured' but only for that covered 'auto'" (i.e., the truck he leased to Iddings) cannot apply to UM/UIM coverage imposed by operation of law. Specifically, Hixson argues that the Ohio Supreme Court has held that "any language in the * * * policy restricting insurance coverage was intended to apply solely to * * * liability coverage and not for purposes of underinsured motorist coverage." *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 666, 710 N.E.2d 1116. Hixson argues that the Ohio Supreme Court's ruling in *Galatis* does not affect this portion of the court's ruling in *Scott–Pontzer*. Under the facts of this case, we disagree.

{¶ 18} In *Scott–Pontzer*, the Ohio Supreme Court found that the exclusionary language in the liability portion of an umbrella policy did not apply to UM/UIM coverage, where UM/UIM coverage was never offered to the insured by the insurance company. In so holding, the *Scott–Pontzer* court relied upon the Tenth District Court of Appeals' decision in *Demetry v. Kim* (1991), 72 Ohio App.3d 692, 595 N.E.2d 997. There, the Tenth District found that the parties to the insurance contract did not clearly and unambiguously state their intention for the exclusionary language of the liability portion of the policy to apply to UM/UIM coverage because "[t]he parties never intended underinsured coverage to be provided by the policy." *Demetry* at 698, 595 N.E.2d 997. Accordingly, the Tenth District found that "there could be no negotiated exclusions intended to be implied to the underinsured coverage." Id.

{¶ 19} When the Ohio Supreme Court revisited the *Scott–Pontzer* decision in *Galatis*, it found that "the intent of the parties is paramount." *Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256 at ¶ 55. The court stated, "The general intent of a motor vehicle insurance policy issued to a corporation is to insure the corporation as a legal entity against liability arising from the use of motor vehicles." Id. at ¶ 20, citing *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380. Therefore, the court concluded, "an employee's activities outside the scope of employment are not of any direct consequence to the employer as a legal entity. An employer does not risk legal or financial liability from an employee's operation of a nonbusiness-owned motor vehicle outside the scope of employment. Consequently, uninsured motorist coverage for an employee outside the scope of employment is extraneous to the general intent of a commercial auto policy." Id. at ¶ 20. Accordingly, the court held, "Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment." Id. at ¶ 62. Here, Hixson advances no argument that he was acting in the course and scope of his employment at the time of his accident.

{¶ 20} In *Galatis*, there was no allegation that UM/UIM coverage arose as a matter of law under *Linko*. The Ohio Supreme Court, however, has reversed several cases on the authority of *Galatis* where the courts of appeal found that UM/UIM coverage did arise by operation of law. See *In re Uninsured & Underinsured Motorist Coverage Cases*, 100 Ohio St.3d 302, 2003-Ohio-5888, 798 N.E.2d 1077.

{¶ 21} Here, even if we assume, arguendo, that UM/UIM coverage arises by operation of law pursuant to R.C. 3937.18 and *Linko*, we find that the *Scott–Pontzer* rationale advanced by Hixson is distinguishable from the case at hand in light of the Supreme Court's decision in *Galatis* and the facts of this case.

{¶ 22} Here, the liability portion of the policy clearly states, "While any covered 'auto' described in the Schedule is rented or leased to you and is being used by or for you, its owner or anyone else from whom you rent or lease it is an 'insured' but only for that covered 'auto'." The parties do not dispute that Hixson leased his truck to Iddings, and that his truck was a "covered 'auto'" under the policy. Thus, the plain language of the liability portion of the motor carrier policy evidences Westport and Iddings' intent to insulate Iddings from any liability that might arise from Hixson's use of his truck while he leased it to Iddings. This language, defining Hixson as an "insured" only when he was driving "that covered 'auto,'" also plainly indicates Westport and Iddings intention to exclude Hixson's use of his personal motorcycle, or other personal auto, from the policy's liability coverage.

{¶ 23} Additionally, the policy declarations plainly state Westport and Iddings' intention to include UM/UIM coverage of $25,000 per accident under the policy. The policy clearly evidences the intention of the parties to include *some* amount of UM/UIM coverage—regardless of whether Westport properly offered UM/UIM coverage equal to the liability limits of the policy, or whether Iddings effectively selected lesser UM/UIM coverage limits under R.C. 3937.18 and *Linko*. Furthermore, the UM coverage form in the Westport policy defined "Insureds" when the named insured is a corporation to include:

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

{¶ 24} Unlike the situation presented in *Scott–Pontzer*, where the parties to the insurance contract did not contemplate any UM/UIM coverage under the umbrella policy, Westport and Iddings expressed a clear intention to include UM/UIM coverage under the policy at issue here. Furthermore, they also expressed a clear intention to limit UM/UIM coverage to persons occupying a "covered

'auto.' " Hixson presents no argument that his personal motorcycle was a "covered 'auto' " under the Westport policy.

{¶ 25} Based upon the foregoing, construing the evidence most strongly in Hixson's favor, we conclude that there is no genuine issue as to any material fact and that Westport is entitled to judgment as a matter of law. Accordingly, we overrule Hixson's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

PETER B. ABELE, J., concurs.

HARSHA, J., concurs in judgment only.